## SMITH *v.* SMITH

[No. 126, September Term, 1961.]

*Decided January 17, 1962.*

The cause was argued before HAMMOND, HORNEY, MAR-BURY, SYBERT, and DUCKETT, Associate Judge of the Fifth Judicial Circuit, specially assigned, JJ.

*Isidor Roman,* for appellant.

*Southey F. Miles, Jr.,* for appellee.

Sybert, J., delivered the opinion of the Court.

This appeal questions whether the Chancellor was erroneous in determining the amount of alimony to be paid by appellant, Hiram E. Smith (defendant below), to appellee, Lula E. Smith (plaintiff below), his wife, and it also questions the validity of certain other portions of the decree.

The appellant, a clergyman, has been for many years the pastor of a Baltimore church. He also has carried on a real estate business and acquired extensive properties, generally held as tenants by the entireties with his wife, who assisted him in all of these endeavors. Since their marriage in 1931 they have had seven children whom they sent to college; maintained both a city and a beach home, and at one time had four motor boats and at another three automobiles. Of the seven children, six are adults and one is a minor son attending Morgan State College. One of the adult sons is an epileptic, unable to work and requiring care at home, which involves considerable medical expense, according to appellee's testimony. The minor and the epileptic son live with the appellee.

On September 17, 1959, appellant left his wife and began living in another house owned by the parties. Shortly thereafter he was seen in the company of one Hattie L. Williams. All family efforts at reconciliation were futile, the appellant refusing to return or discontinue his relationship with the other woman. He became a joint owner of a piece of leasehold real estate and an automobile with her and made payments on her behalf to the extent of $4,675.33 within a year, according to a record of such expenditures in his own handwriting, introduced by the wife at the trial.

Appellee, as a result, filed a bill of complaint for permanent alimony. Appellant answered and filed a cross-bill for an absolute divorce on ground of desertion. After hearing the case on its merits the Chancellor entered a decree dismissing appellant's cross-bill and ordering: (1) that appellant pay appellee $50.00 a week as permanent alimony; (2) that he pay her $12.50 per week for support of the infirm adult child until he is able to be gainfully employed; (3) that he pay her $12.50 per week for support of the minor child while he at-

tends Morgan State College; (4) that the appellee be entitled to reside on property on Grantley Road owned by them by the entireties, and requiring appellant to make the mortgage payments on this property; and (5) that appellant turn over to appellee a certain automobile titled in his name for her exclusive use, with all expenses for the car to be paid by appellee.

In this appeal from the decree the appellant contends that the Chancellor erred by awarding excessive alimony to the wife and in certain other respects which will be discussed hereinafter.

### (1)

We do not think the Chancellor was wrong in ordering the appellant to pay his wife $50.00 weekly as alimony. He had before him on the one hand the standard of living the parties had enjoyed up to the time of their separation, with no indication that this rather comfortable level was about to decline for any reason, particularly with five of the children already emancipated. On the other hand, the Chancellor had before him the earnings of the appellant, and reason to believe that they were higher than appellant's testimony and skimpy records would indicate. Since appellant himself stated he did not know what his exact earnings were, a 1959 joint income tax return (no 1960 return had been filed) was introduced and showed a gross income of $7,776.08, of which only $600 could be attributed to the wife. The gross income figure apparently represented the appellant's income as pastor of $4500 a year and $3200 from "other work", but the appellee testified that her husband's special fees for presiding at weddings, funerals, and other such occasions were not reflected in his income tax return to her knowledge. Appellant's present salary as pastor is $5200 a year. While appellant contended that the rents from the various properties, which he has continued to collect, did not meet expenses and mortgage payments, he did not include in the listed holdings certain shore property that had been leased at $3,000 per year, and from which he had already collected between $900 and $1,000, which "was all put into the bank". In addition, he admitted that he receives every month a check from the

Government for $67.00, the nature of which was not explained.

In considering all the circumstances of the case, including the amount of money appellant was expending on the other woman, the Chancellor in our opinion did not abuse his discretion in setting the amount of the alimony and therefore we will not disturb his award. A wife will not be made to suffer because of her husband's extravagance. *Brown v. Brown*, 204 Md. 197, 209-210, 103 A. 2d 856 (1954). Compare awards of $50.00 a week made in *Ashman v. Ashman*, 194 Md. 565, 72 A. 2d 250 (1950), and *Lopez v. Lopez*, 206 Md. 509, 112 A. 2d 466 (1955).

(2)

Appellant contends that the Chancellor clearly erred in ordering him to pay the sum of $12.50 per week for support of the physically incapacitated adult son of the parties. He cites *Borchert v. Borchert*, 185 Md. 586, 45 A. 2d 463 (1946), as authority for the proposition that Art. 16, § 25, Code (1957), providing for support of children in case of divorce, applies only to minor children regardless of disability. In that case this Court noted that there was no common law obligation to support adult, incompetent children, but found, in view of many decisions in other jurisdictions affirming such liability, often without any supporting statutory enactment, "that there is now a tendency in this country, whether based upon local statutes or upon a modern judicial expansion of the common law, to recognize a duty imposed upon a parent to support his incapacitated child." (at p. 592). However, in the absence of statutory authority in this State, the Court declined to follow the trend, stating (at pp. 594-595):

> "However desirable it may be for some power to exist by which a father may be compelled to support his son, under the circumstances set out in these proceedings [physical and mental disability], the Legislature has not seen fit to make the failure to do so a criminal offense although it has so designated such failure in other domestic situations * * *. The omission * * * of such a statute is an indica-

tion that the failure to support an incapacitated child is placed * * * on a different footing from the failure to support a minor child. We cannot now *without further legislative action* hold that the divorce statute attempted to be invoked in this case is enlarged to include other than minor children * * *."
(Emphasis added.)

It is significant, we think, that at the first opportunity after the *Borchert* decision further legislative action was in fact taken. At its 1947 session the Legislature enacted an act now codified as § 97 of Art. 27, Code (1957), making it a criminal offense for a parent, possessing the means, to fail to provide for a destitute adult child where mental or physical infirmity makes it impossible for the child to care for itself. The passage of this act is a clear indication of legislative intent to place failure to support an incapacitated child on equal footing with failure to support a minor child. In our opinion, therefore, the Chancellor was justified in recognizing this legislative policy and awarding support payments for the disabled adult child, whom the testimony showed was destitute of other means of maintenance. For a review of jurisdictions allowing support payments for incapacitated adult children see cases cited in *Borchert v. Borchert, supra,* and 2 *Nelson, Divorce and Annulment,* § 14.80.

(3)

Appellant maintains that the Chancellor, in directing him to pay $12.50 per week for the support of his minor child "during that period which said son attends Morgan State College," erred when he failed to make a custody order respecting the son, and when it was apparent that the son, then 19 years of age, could become self-supporting. We find no merit in either of these points.

It is the common practice, and usually the better practice, to provide for the custody of a minor child when awarding support payments for his maintenance. However, the relevant provisions of the statutes, §§ 25 and 66 of Art. 16, Code (1957), do not make the award of support for a minor child contingent upon the granting of custody. Furthermore, this

Court has recognized the common-law obligation of a father to support his children during their minority, without regard to a decree divorcing the parents. *Hull v. Hull,* 201 Md. 225, 93 A. 2d 536 (1953). See also 2 *Nelson, Divorce and Annulment,* § 15.57. The minor son in this case was living at home with his mother, who provided for his necessities, and thus it was not necessary that the decree expressly grant custody to the mother.

As to the second part of this contention, it assumes that when a minor reaches an employable age the parent is no longer obliged to support him. Nothing in the statutes indicates such a qualification of a parent's obligation to support his minor children, nor has our attention been called to any decisions so holding. Cf. *Roberts v. Roberts,* 160 Md. 513, 154 Atl. 95 (1931). As has been said many times, in the award of alimony and support money the financial circumstances of the parties, their station in life, and the expense of educating the children are among the factors to be considered. The record before us shows that a college education for the children has been afforded as an incident of the station in life of this family, and the father is financially able to pay the modest allowance made for the minor son while attending college, until he attains his majority, when the obligation will cease. We see no error here.

(4)

The contention is made that the trial court erred in decreeing that the appellee was entitled to reside on the fee simple property on Grantley Road, owned by the parties as tenants by the entireties, and in ordering appellant to pay the entire monthly mortgage installments (which include taxes and interest) due on the property.

As to the first part of this contention, it is axiomatic that where property is owned by the entireties, both spouses are *entitled* to reside on the property. There is no grant of *exclusive* possession of the Grantley Road property to appellee in the decree; in fact, appellee expressly denies any intention to exclude appellant from use of the property. Thus the decree in no way divests appellant of his right to beneficial use of a part of his estate, and that part of the decree should not be disturbed. Cf. *Roberts v. Roberts, supra.*

However, the Chancellor erred in ordering the appellant to make the mortgage payments, including taxes. Even in divorce suits, the court under our statute, Art. 16, § 29, Code (1957), has the power to deal only with personal property and not real property. In this suit for alimony and support there was no power in the Chancellor, in the absence of a specific statute, to adjust the property rights of the parties. *Bailey v. Bailey,* 218 Md. 527, 147 A. 2d 747 (1959); *Hull v. Hull,* 201 Md. 225, 93 A. 2d 536 (1953). This is not the situation presented in *Gunter v. Gunter,* 187 Md. 228, 49 A. 2d 454 (1946), cited by appellee, where the husband did not contest the award of alimony partly in the form of payment of taxes on the dwelling owned by the parties as tenants by the entireties and occupied by the wife, but instead was suing at a later time for partition by sale of the property, to which this Court found he was entitled. Therefore that part of the decree will be reversed.

As a practical matter, the record shows that the appellant is collecting all the rents from the various properties and presumably has been paying all the expenses on the properties owned by the parties, including the property in question. Doubtless the Chancellor took this fact into consideration in determining what the alimony payments should be, and it may be that a larger weekly amount would otherwise have been awarded. If the present arrangement for collecting rents continues, the appellee will always have the recourse of informing the Chancellor if her husband fails to meet payments on the property on which she is residing. Since the court retains continuing jurisdiction to increase or reduce the amount allowed as alimony, such circumstances may justify an increase in the weekly amount awarded to appellee.

### (5)

We agree with appellant's final contention that the Chancellor erred in ordering the appellant to turn over one of his automobiles to the appellee for her exclusive use. Art. 16, § 29, Code (1957), gives the court the power to hear and determine questions of the ownership of personal property only in suits for divorce and this section has no application in an action for alimony without divorce, as is the case here. *Bailey*

*v. Bailey, supra.* In view of this holding, the Chancellor, upon remand, may take into account the fact that use of an automobile was clearly a part of appellee's usual standard of living and revise the amount of alimony accordingly.

>*Decree reversed in part and affirmed in part and case remanded for the passage of a decree to conform with this opinion: appellant to pay the costs.*