## JAMES B. COLBURN, JR. *v.* MARJORIE B. S. COLBURN

[No. 927, September Term, 1979.]

*Decided April 14, 1980.*

314

The cause was argued before MOORE, LISS and COUCH, JJ.

*Steven R. Migdal,* with whom were *Manis, Wilkinson & Snider, Chartered* on the brief, for appellant.

*Charlotte Gilden Krohn,* with whom was *Stephen Philip Krohn* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

During World War II at the Lord Mayor's Day Luncheon in London (November, 1942), Winston Churchill recounted that the then late Greek statesman, M. Venizelos had "observed that in all her wars England ... always wins one battle — her last." Britain's plight at that point was somewhat grim, but the Prime Minister noted that what was then happening was "not the end. It is not even the beginning of the end. But is, perhaps, the end of the beginning." It is hoped that this case which has been wending its way through the domestic courts of several states for almost a decade, while it may not be at an end, will have reached at least the end of its beginning. This Court and the Court of Appeals of Maryland have determined the rights of the parties in a series of appeals and cross-appeals in four previously reported cases. We are here presented with the fifth of the battles in this seemingly never ending war.[1]

1. The previous cases are: Colburn v. Colburn, 265 Md. 468, 290 A.2d 480 (1972); Colburn v. Colburn, 262 Md. 333, 278 A.2d 1 (1971); Colburn v. Colburn, 20 Md. App. 346, 316 A.2d 283 (1974); Colburn v. Colburn, 15 Md. App. 503, 292 A.2d 121 (1972).

The case began in 1971. In April of that year, by a decree of the Circuit Court for Anne Arundel County, the appellee herein, Marjorie B. S. Colburn, was granted a divorce *a mensa et thoro* from her husband, James B. Colburn, Jr., the appellant in these proceedings. The decree awarded the wife $650 per month as permanent alimony, and the husband was awarded custody of the mentally retarded minor son of the parties with specific visitation rights to the appellee. That decree was affirmed on appeal by this Court in *Colburn v. Colburn,* 15 Md. App. 503, 292 A.2d 121 (1972). The husband thereafter established residence in Florida and on December 14, 1971, obtained a divorce *a vinculo matrimonii* from his wife in an *ex parte* proceeding before the Circuit Court of the Sixteenth Judicial Circuit of Florida, Broward County. At a later date, the husband was appointed guardian of the child by the Florida court. This was necessary in order for the child to be eligible for a $3500 annual educational grant by the State of Florida which was payable to the school where the child was enrolled in a program for handicapped children. The husband thereafter ceased paying the alimony ordered by the *a mensa* decree of the Circuit Court for Anne Arundel County. As a result of this action, on January 18, 1972, the Circuit Court for Anne Arundel County ordered that certain real property owned by the husband be sequestered in order to pay the accrued alimony arrearages and as security to assure compliance with the continuing permanent alimony order. Subsequently on June 14, 1973, the order of sequestration was modified. The new order required the husband to place the sum of $12,000 in a savings account in Maryland to guarantee the payment of alimony. The husband then filed motions to terminate the writ of sequestration and to modify and/or terminate alimony and visitation rights. After hearing the motions, the Circuit Court denied the husband's motion to terminate sequestration, reduced the alimony payments to $400 per month, and modified the wife's visitation rights. That decree was affirmed by this Court in *Colburn v. Colburn,* 20 Md. App. 346, 316 A.2d 283 (1974). A subsequent motion to set aside the court's order to place money in the hands of a trustee was denied by the Circuit Court on January 10, 1975.

The guerilla warfare between these combatants broke out again in December of 1978 when the wife filed a suit in the District Court of Maryland for Anne Arundel County in which she sought reimbursement for medical bills and transportation costs she alleged were due her from the husband which he had refused to pay. That case was dismissed on the basis of a settlement between the parties.

The latest skirmish began when the wife filed a salvo of three petitions in the Circuit Court for Anne Arundel County in which she sought modification of visitation rights, an increase in alimony, and a citation against the husband for contempt of court for failure and refusal to obey or observe the existing visitation order. All three petitions were set for hearing on March 23, 1979, at which hearing the chancellor (Goudy, J.) rendered oral decisions on each of the petitions which were later incorporated in his decree of March 29, 1979. At the hearing on March 23, the husband hand-delivered to the wife a petition to terminate the sequestration of funds; no hearing was requested in that petition. The wife filed an answer on April 5, 1979. On April 10, 1979, Judge Wray, the Chambers Judge, denied the husband's petition. The husband then filed a motion for reconsideration which was answered and denied. This appeal is from Judge Wray's decision of April 10, 1979, and from that portion of Judge Goudy's decree of March 29, 1979, wherein the Circuit Court's jurisdiction over the support, custody, and visitation of the parties' mentally retarded son — who had attained majority — was continued. The appeal also raises the issue of the propriety of the award of a $535 counsel fee to the wife's attorney. The issues to be decided are stated as follows:

1.  Whether the chancellor was correct in deciding that the Circuit Court for Anne Arundel County had continuing jurisdiction in matters relating to custody, support and visitation of the dependent mentally retarded child of the parties who had attained twenty-one years of age?

2. Whether the chancellor below was clearly erroneous in his award of counsel fees to the appellee?

3. Whether the chancellor below erred in denying appellant's petition for termination of sequestration without a hearing?

1.

Appellant urges that the chancellor erred when he held that the Circuit Court for Anne Arundel County had continuing jurisdiction after the retarded child of the parties reached the age of majority. In support of his position, appellant cites *Borchert v. Borchert,* 185 Md. 586, 45 A.2d 463 (1946), which dealt with the subject of a divorce court's continuing jurisdiction over an adult incapacitated child. In that case, the wife petitioned for a modification of her divorce decree to extend a support award into the adulthood of the child. The Court of Appeals, in discussing the statutory authority granted to equity and divorce courts, said in *Borchert,* at 593:

> Neither of these statutes attempts any definition or enlargement of the word "children" and unless we attempt judicial legislation that word must be construed as meaning children in the ordinary sense; that is those who have not reached their majority.

The Court went on to say:

> However desirable it may be for some power to exist by which a father may be compelled to support his son, under the circumstances set out in these proceedings, the Legislature has not seen fit to make the failure to do so a criminal offense although it has so designated such failure in other domestic situations heretofore mentioned. The omission by the legislative branch of the government of such a statute is an indication that the failure to support an incapacitated child is

placed by it on a different footing from the failure to support a minor child. We cannot now without further legislative action hold that the divorce statute attempted to be invoked in this case is enlarged to include other than minor children. The similar statute, Article 16, Section 85, has been held by this Court to apply to minor children (*Barnard v. Godfrey,* 157 Md. 264, 145 A. 614), although the question presented here was not raised there. A like interpretation of Article 16, Section 41, is indicated by its wording and by the ordinary meaning of the word "children." We, therefore, conclude that this statute gives no power to grant the relief prayed for in appellee's petition and that the demurrer to it should have been sustained. [*Id.* at 594-95.]

As a result of the *Borchert* holding, the Maryland Legislature amended the criminal non-support statute.[2] It now provides that the parent of an adult child who is unable to support himself by reason of mental or physical infirmity is obligated to provide the child with the necessary shelter, food, care and clothing. That statute was before the Court of Appeals for interpretation in *Smith v. Smith,* 227 Md. 355, 176 A.2d 862 (1961), and there the Court held:

The passage of this act is a clear indication of the legislative intent to place failure to support an incapacitated child on equal footing with failure to support a minor child. In our opinion, therefore, the Chancellor was justified in recognizing this legislative policy and awarding support payments for the disabled adult child, whom the testimony showed was destitute of other means of maintenance. [227 Md. at 360.]

In the case before us, the chancellor below held that the obligation to support an adult handicapped child under the non-support statute is analogous to the right of the equity

---

2. Maryland Code (1957, 1976 Repl. Vol.) Art. 27, Sec. 97.

court to continue its jurisdiction as to the right of visitation with that child. He rested his decision on *Smith v. Smith, supra.* We agree.

Section 3-602 of the Courts and Judicial Proceedings Article (1974, 1979 Supp.) states the jurisdiction of courts of equity in Maryland as follows:

(a) A court of equity has jurisdiction over the custody, guardianship, legitimation, maintenance, visitation and support of a child. In exercising its jurisdiction, the court may:

 (1) Direct who shall have the custody or guardianship of a child;

 (2) Determine the legitimacy of a child, pursuant to § 1-208 of the Estates and Trusts Article of this Code;

 (3) Decide who shall be charged with the support and maintenance of a child, pendente lite or permanently;

 (4) Determine who shall have visitation rights to a child; or

 (5) From time to time set aside or modify its decree or order concerning the child.

\* \* \*

Article 16, Section 66 (f) of the Annotated Code of Maryland (1957, 1973 Repl. Vol.) sets out the rights of equity courts to determine custody or visitation rights of children as follows:

(f) In all cases where one party to a marriage, existing or pre-existing, removes or has removed a child or children of the marriage from this State, the courts of equity of this State shall exercise jurisdiction to determine custody or visitation rights of the child or children so removed, if:

 (1) Maryland was the matrimonial domicile of

the parties or the domicile where the marriage contract was last performed; and

(2) Such court shall have obtained personal jurisdiction of the party so removing the child or children; and

(3) One of the parties to said marriage shall have been at the time of said removal, a resident of the State of Maryland and shall continue to reside therein.

Nothing in this subsection shall be construed in any way to limit or modify other methods by which courts of equity obtain jurisdiction to determine the custody or visitation rights of the children.

We conclude that although this unfortunate child is an adult in terms of his chronological age, he, nevertheless, is a "minor child" in view of the legislative policy expressed in Article 27, Section 97.[3] Jurisdiction over visitation rights to this "minor child" is vested in the Circuit Court for Anne Arundel County by the terms of Article 16, Section 66 (f) as above quoted, as the parties fall squarely within the provisions of that section. It is clear, then, that the chancellor did not err when he found continuing jurisdiction existing in the Circuit Court.

2.

Appellant argues that the court erred in awarding counsel fees to the appellee. We agree. The record shows that the appellee had income of $145 per week for thirteen weeks arising out of her employment as a legislative aide. She had additional income of $400 per month as alimony. She received dividends in 1978 of $4,726 and interest in that same year of $2,574. The evidence disclosed that her overall net worth was $114,859, which included $20,000 in

---

**3.** Courts Article (1979 Supp.) Section 3-6A-01 (d) which became effective on January 1, 1979, and is not here retroactively applicable contains the definition of a "minor child" as including "a child 18 years of age or older who, because of mental or physical disability is dependent upon a parent."

certificates of deposit as well as bank accounts totaling over $10,000. There is no evidence whatsoever in the record regarding the husband's income and assets. We think the law as stated by the Court of Appeals in *Lopez v. Lopez,* 206 Md. 509, 520-21, 112 A.2d 466 (1955), is controlling:

> [T]he Court should take into consideration the financial circumstances of the parties, and determine the amount in accordance with the wife's necessities and the husband's financial ability, and allow an amount that will afford the wife an efficient presentation of her side of the controversy.

This statement of the law must be considered in conjunction with Article 16, Section 5 (a) of the Code (1957, 1973 Repl. Vol., 1979 Cum. Supp.), which states:

> In all cases where alimony or alimony pendente lite and counsel fees are claimed, the court may not award alimony, alimony pendente lite, or counsel fees unless it appears from the evidence that the spouse's income is insufficient to care for his or her needs.

In the light of the fact that no evidence was offered as to the husband's income and that evidence was adduced at the hearing that the wife received a yearly income of $7,300 in interest and dividends — which amount she failed to disclose in her financial statement filed with the court — we conclude that the chancellor erred in awarding counsel fees to the wife on the basis of the evidence available to him at the time of the hearing.

### 3.

We find no error in the chancellor's refusal to release the sequestered funds required to be kept on deposit to insure the payment of alimony. While it is true that payments on account of alimony have been regularly made over an

appreciable period of time, the warfare between these parties has continued, and for that reason the chancellor obviously was not entirely convinced that the alimony payments would be continued if the sequestered funds were released. The release of the funds was a discretionary matter for the chancellor, and we find no abuse of his discretion.

We are not impressed with appellant's complaint that the Chambers Judge acted on appellant's motion without giving him a hearing. No hearing was requested, and appellant was charged with knowledge that in the absence of such a request the matter would be submitted to the Chambers Judge for disposition. Nor is appellant's contention that Judge Wray was "totally unfamiliar" with the case borne out by the facts. Judge Wray had, in fact, been involved in hearing a similar motion by the appellant and had the benefit of the entire file before him when he ruled on the motion. In the absence of a finding that his decision was clearly erroneous, we must affirm. Maryland Rule 1086.

> *Order affirmed in part, reversed in part.*
> *Costs to be paid by appellant.*