500 A.2d 322

**Floyd E. PRESLEY, Jr.**

v.

**Mary Ellen PRESLEY.**

**No. 315, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Nov. 15, 1985.

Paul W. Barnett (Barnett & Barnett, on brief), Cumberland, for appellant.

Frank P. Flury, Riverdale, for appellee.

Argued before MOYLAN, WILNER and GARRITY, JJ.

WILNER, Judge.

The principal issue in this appeal is whether the Circuit Court for Prince George's County erred in requiring appellant, both prospectively and retrospectively, (1) to make periodic support payments to his adult mildly retarded daughter Pamela, and (2) to pay a certain share of Pamela's medical expenses and medical insurance premiums. In a

cross-appeal, Pamela's mother, appellee, complains about the court's denial of her request that appellant pay a share of her counsel fees.

Pamela was born in 1964. She is, and apparently always has been, mildly mentally retarded. From ages 6 to 10, Pamela attended a school for mentally handicapped children; she was then transferred into a special education program at a regular public school. At the age of 16, Pamela left school and enrolled in a State vocational rehabilitation program. She thereafter worked at a number of "minimum wage" jobs—a "shampoo girl" in a beauty shop, a laborer at a commercial greenhouse. At the time of trial, she was employed as an animal caretaker by the National Institute of Health.

In June, 1975, when Pamela was 11 years old, the parties were divorced by the Circuit Court for Prince George's County. The divorce decree incorporated by reference a separation agreement entered into by the parties in April, 1975, which, in relevant part provided:

(1) "That the wife shall have custody of the minor child, Pamela, with reasonable rights of visitation to the husband" (¶ 2);

(2) "The husband agrees to pay the sum of One Hundred Dollars ($100.00) per month to the wife as child support for Pamela, and he further agrees to pay all medical and dental expenses for said minor child" (¶ 4); and

(3) "The husband agrees to continue to name the wife as sole beneficiary of all present life insurance policies until their youngest child, Pamela, becomes eighteen years of age" (¶ 7).[1]

Nowhere did the agreement or the divorce decree refer to Pamela's handicap or allude to her being mentally retarded.

Appellant paid the $100/month support called for in the agreement throughout and beyond Pamela's minority. He

---

1. The parties also had an older child, not involved in this case, whose custody was given to appellant.

discontinued the payments in the spring of 1983, when Pamela was 19, apparently as the result of a disagreement over appellee's allowing Pamela (1) to leave appellee's home and take an apartment of her own, (2) to have her own car, and (3) to undergo sterilization by means of tubal ligation. Appellee responded in May, 1983, with a petition claiming an arrearage in support and medical expense payments and seeking both an order of contempt with respect to the arrearage and an order continuing and increasing appellant's future support obligation. In July, 1984, appellee amended her petition by deleting her request for a contempt citation but adding a request that "an order be entered finding [Pamela] to be a minor child, by reason of mental infirmity, within the Maryland Law, for purposes of support, and that the Court retain permanent jurisdiction of the parties and this case, until further order by the Court."

Appellant moved preliminarily to dismiss the petition on the grounds that (1) he had no obligation to support Pamela beyond her 18th birthday, and (2) Pamela was a necessary party to the proceeding. Appellee offered two theories to support a continuing obligation—the 1975 separation agreement and the requirements of Md.Code Ann. art. 27, § 97, which, at the time of the petition and the hearing thereon, provided: [2]

"Any person who has an adult child destitute of means and unable to support himself by reason of mental of physical infirmity, who is possessed of or able to earn means sufficient to provide such child with necessary

---

2. One of the minor complications in this case is the fact that, as part of the bill enacting Md.Code Ann.Family Law article, art. 27, § 97 was repealed. Its provisions were reenacted, with some change in language, as §§ 13–101 and 13–102 of the new article. The Family Law article took effect October 1, 1984. As the evidentiary hearing on the petition took place on September 5 and the court announced its findings immediately upon the conclusion of the hearing, the case was tried on the basis of § 97. The actual order, however, from which the appeal is taken, was not entered until October 9, 1984. As we shall find no substantive difference between the old and new laws, however, the statutory change is of no real consequence.

shelter, food, care and clothing and who neglects or refuses so to do, shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $1,000.00 or imprisoned for not more than one year, or both."

The court appeared to reject appellee's argument that there was any continuing contractual obligation under the separation agreement, suggesting several times that the agreement had "expired" when Pamela turned 18. Although the court mentioned the statute, it never clearly indicated whether a continuing obligation on the part of appellant could arise from it. Relying on *Colburn v. Colburn*, 45 Md.App. 313, 412 A.2d 1309 (1980), however, the court held that it had a continuing jurisdiction to modify the divorce decree, even after the child attained her majority. It was apparently on that basis that the court proceeded.

There was evidence presented at the hearing showing that:

(1) Pamela is mildly retarded. As measured by the Wechsler Adult Intelligence Scale, her full scale I.Q. is 77, which puts her in the seventh percentile (*i.e.*, 93% of the population would achieve a higher score).

(2) She is capable of gainful employment. She has been employed by the National Institute of Health, full-time, since August, 1983. Though still a probationary employee at time of trial—*i.e.*, she had not attained merit system status—she was earning a gross annual salary of $14,200. Her net pay was approximately $10,600, or about $888/month.

(3) Pamela had minimal living expenses while she resided with appellee. At time of trial, she shared a one-bedroom and den garden apartment with another young woman, who contributed to the rent and expenses. Even with the contributions of her roommate, Pamela's net income fell short of covering her general expenses, excluding medical expenses, by about $2400/year, or $200/month. In addition, she

incurred unreimbursed medical expenses of about $900/year.

(4) Pamela is not quite so independent as her living and working arrangements facially might suggest. Appellee furnished her apartment and bought her a car; she has paid for Pamela's unreimbursed medical expenses and has made up part of Pamela's general monthly deficit. She has also provided substantial assistance to Pamela in terms of everyday activities—shopping, budgeting, attending to her clothes, etc.

Most of this evidence was not really in dispute. Appellant's position was not that Pamela didn't have these expenses, but that they were unnecessary. He objected to Pamela's having her own apartment and car, and in general thought her standard of living was too high.

At the close of the hearing, the court made a general finding that Pamela "has a mild mental disability that causes her to be temporarily partially dependent upon her parents" and that this temporary partial dependency "has been ongoing since she reached the chronological age of eighteen." The basis for this finding, however, was apparently not the shortfall between Pamela's net income and expenses, as was testified to by appellee, but rather the court's concern over the fact that Pamela had not yet achieved merit system status at her employment. The court said, in this regard:

> "*I find that this child substantially supports herself. The only problem is we don't know whether this is going to be permanent.* But I will have the Defendant to continue one hundred dollars per month child support and no more.
>
> Now, the reason I initially made the finding about temporary, is because I foresee that this is going to come to an end because this young lady is successful at NIH. She is going to be on her own. And there is no sense setting her up for a failure, by assigning to her a standard of living that she is not going to be able to maintain.

We have to be pragmatic in these things. These are sad things, but there is no obligation that a parent maintain a child indefin[i]tely in an artificial standard of living. *Any child earning fourteen thousand dollars a year can maintain a decent standard of living without assistance. And I think it is manifestly unfair to require a parent to maintain a child in a standard of living in excess of that indefinitely.*

Therefore, after having made these findings about temporary partial, we have to set this matter in for a review. Now, the first review would be August of 1985. When she will have completed her second year. At that time, if she still is employed at NIH, as I understand it she begins ... at that point to be eligible for health insurance on her own. But that, although she would be a merit employee at that point is still temporary or probationary, so then there should be a further review in August of 1986.

*And, gentlemen, at that time, if she goes off probationary status, the Court foresees an end to temporary partial disability.* But we have to bridge it. And we have to be pragmatic while we are bridging this gap." (Emphasis added.)

Upon these findings, the court, on October 9, 1984, entered an order directing appellant to pay:

(1) Two-thirds of the cost of Pamela's medical and hospitalization insurance and three-fourths of her uninsured medical, psychological, dental, and prescription drug expenses accruing from and after May 1, 1983;

(2) Arrearages of $3,788 in medical and dental expenses incurred by appellee for Pamela prior to the filing of the petition, $984 in medical expenses incurred for Pamela since the filing of the petition, and $1,600 in monthly support.

The October 9 order said nothing about future payments of periodic child support. It is clear, however, from the court's remarks that it regarded that obligation as flowing from the initial divorce decree. Indeed, the October 9 order was couched as an amendment to that decree.

From this order and the extension of his duty of support under the divorce decree, appellant has brought this appeal. Although he initially challenged appellee's standing to prosecute this action on behalf of Pamela, at oral argument he withdrew that issue in light of *Stern v. Stern*, 58 Md.App. 280, 473 A.2d 56 (1984). His complaint now goes solely to the court's substantive conclusion that he has a continuing obligation to support Pamela.

Appellee, as we have noted, has cross-appealed. The court denied her request for counsel fees on the basis that,

"Everybody is operating in good faith. There aren't any counsel fees. Everybody pays their own counsel fees. These are legitimate legal questions. It would be something entirely different if this man had been under a court order to do something and he didn't do it and had to hire a lawyer to come in here and make him do it. That is not what we are doing. This is an honest dispute. What is and is not an obligation. He should not have to pay counsel fees to the other side for causing it to come to issue so a resolution can be made. That is legitimate."

She feels that the court erred in rejecting her request on that basis.

### (1) *Continuing Obligation For Support*

■ As a general rule, a parent's obligation to support his or her child ends when the child reaches majority—age 18. Three theories were asserted in the Circuit Court for continuing appellant's obligation to Pamela beyond that point: (1) a contractual duty under the 1975 separation agreement; (2) a duty arising from the support provision of that agreement as incorporated in the divorce decree which, by virtue of then Md.Code Ann.Courts art., § 3–602(a)(5) [recodified since at Family Law art., § 1–201(b)(4)], an equity court has continuing jurisdiction to modify; and (3) a duty imposed by then Md.Code Ann. art. 27, § 97 [recodified at Family Law art., §§ 13–101 and 13–102]. As noted earlier, the court seemed to reject the first theory, disregard the third, and accept the second.

■ We think that the court was correct in finding no contractual duty to support Pamela beyond her eighteenth birthday. Although the word "minor," used adjectively in the agreement, may well be a word of description rather than one of limitation, the fact is that the agreement contains no indication that the parties intended the support payments for Pamela to continue beyond her attainment of majority. In *Monticello v. Monticello,* 271 Md. 168, 173–74, 315 A.2d 520, *cert. denied* 419 U.S. 880, 95 S.Ct. 145, 42 L.Ed.2d 121 (1974), the Court held that, where an agreement requires support payments for a "minor child" or "during minority," it will be construed as requiring the support until the child reaches whatever the legal age of majority was at the time the agreement was signed, absent a "clear expression of contrary intent." We find no such expression in the agreement at issue here. The parties presumably entered into the agreement in light of *Monticello* and in light of the 1973 enactment declaring the age of majority to be 18 and specifically defining the term "minor," as it pertains to legal age and capacity, as referring to persons "who have not attained the age of eighteen years." Md.Code Ann. art. 1, § 24; 1973 Md.Laws, ch. 651. Yet they made no reference to Pamela's handicap or to any requirement of continued support beyond her eighteenth birthday. *Compare Stern v. Stern, supra,* 58 Md.App. 280, 473 A.2d 56, where we found the support provisions of a separation agreement sufficiently ambiguous to permit extrinsic evidence as to the parties' intent.

■ The other two theories must be considered together. In *Smith v. Smith,* 227 Md. 355, 360, 176 A.2d 862 (1962), the Court viewed the 1947 enactment of art. 27, § 97 as a response to the Court's earlier ruling in *Borchert v. Borchert,* 185 Md. 586, 45 A.2d 463 (1946), that a parent had no common law duty to support a disabled adult child and thus as "a clear indication of legislative intent to place failure to support an incapacitated child on equal footing with failure to support a minor child." Though the statute was criminal in nature, making the failure to provide such support a

misdemeanor, the Court held that it was enforceable in equity—that "the Chancellor was justified in recognizing this legislative policy and awarding support payments for the disabled adult child, whom the testimony showed was destitute of other means of maintenance." *Id.*, 227 Md. at 360, 176 A.2d 862.

In *Sininger v. Sininger*, 300 Md. 604, 479 A.2d 1354 (1984), the Court reaffirmed, and indeed extended, the holding in *Smith*, concluding that the parental duty under § 97 to support an adult incapacitated child can arise even after the child has attained majority and become emancipated. The duty depends on the circumstances of the child at the time; it apparently can arise, continue in existence, end, and arise again as the statutory conditions from time to time pertain. The duty, said the Court, "is enforceable under the general equity jurisdiction of the circuit court under § 3–602(a) of the Courts and Judicial Proceedings Article...." *Id.*, 618, 479 A.2d 1354.[3]

It is clear from *Sininger* that, if appellant and Pamela meet the criteria of § 97 (now Family Law art., §§ 13–101, 13–102), appellant can be made to provide support for Pamela notwithstanding that she is both over 18 and emancipated, and his obligation to provide that support can be enforced in equity.

■ We turn then to § 97 and its more recent recodification, Family Law art., §§ 13–101, 13–102. The statute conditions the duty of support on two circumstances: (1) the child must be an adult child who "has no means of subsistence; and ... cannot be self-supporting, due to mental or physical infirmity" and (2) the parent must have or be able to earn "sufficient means ... to provide the destitute adult

---

3. Courts art., § 3–602(a) vested a court of equity with jurisdiction over the custody, maintenance, and support of children and authorized the court, in the exercise of that jurisdiction, to decide "who shall be charged with the support and maintenance of a child" and "[f]rom time to time [to] set aside or modify its decree or order concerning the child." Those provisions are now codified at Family Law art., § 1–201(b).

child with food, shelter, care, and clothing." [4]  Appellant does not dispute the existence of the second circumstance—only the first.

The first element is susceptible of three interpretations. One could read the language literally to require that the child be utterly penniless and unable to work—a hopeless charity case.  We do not believe that the Legislature intended the language to be read so harshly, however; nor have the cases so read it.  *See Sininger v. Sininger, supra,* 300 Md. 604, 479 A.2d 1354; *Stern v. Stern, supra,* 58 Md.App. 280, 473 A.2d 56.  A second approach, toward the other end of the spectrum, is to find a duty of support (against a sufficiently affluent parent) whenever the child's wealth or earning capacity is insufficient to defray his expenses, no matter how extravagant those expenses might be.  We also reject that approach; it is inconsistent with the very concept of a "destitute adult child" and can hardly have represented the legislative intent.

The most reasonable construction, we think, lies between those extremes.  The child need not be penniless, nor may he be profligate.  The duty of support arises when the child has insufficient resources and, because of mental or physical infirmity, insufficient income capacity to enable him to

---

4.  Former art. 27, § 97, quoted earlier in this Opinion, used somewhat different language.  It spoke of a child "destitute of means and unable to support himself by reason of mental or physical infirmity."  The change in language came about during the code revision process, apparently in the belief that "destitute of means" was the literal equivalent of "has no means of subsistence."  In the recodification, § 97 was split into parts of two sections—§ 13–101(b), defining a "destitute adult child," and § 13–102(b) and (c), setting forth the duty of support for such a child.  The Revisor's Note to § 13–102 states that the section "is new language derived without substantive change from former Art. 27, §§ 97 and 104."  Given the general rule of construction disfavoring the finding of substantive changes from mere code revision (*see Bureau of Mines v. George's Creek,* 272 Md. 143, 321 A.2d 748 (1974); *Office & Prof. Employees Int'l v. MTA,* 295 Md. 88, 453 A.2d 1191 (1982)), we are satisfied that no substantive change was made in the recodification of § 97 and that the phrase "has no means of subsistence" does indeed have the same meaning as "destitute of means."

meet his *reasonable* living expenses. This is a familiar standard which can be easily applied and readily reviewed. The court can examine the child's available assets, his eligibility for disability or other assistance, and his earning capacity and weigh them against what he reasonably needs to provide a proper subsistence level.

The court below appeared to accept this as the proper standard. We think, however, that it erred in applying the standard.

The court drew a distinction between Pamela's general expenses and her medical expenses—*i.e.*, the cost of medical and hospitalization insurance and unreimbursed medical expenses—although, in the end, it related both to the probationary nature of Pamela's employment.

Absent some specific statutory provision, a parent has no greater or different duty to provide medical care for an adult child than he or she does to provide general support. The child's medical needs are part of his or her general needs. In deciding whether there is a duty under § 97 (new § 13–102), therefore, the child's total expenses must be taken into account. By separating out Pamela's medical expenses, the court reached essentially inconsistent conclusions. Considering only the non-medical expenses, the court found that Pamela "substantially supports herself" and "can maintain a decent standard of living without assistance." Yet, as to the medical expenses, it apparently found that Pamela was unable to afford any part of them, for it required the parents, between them, to pay the full cost.

This error was exacerbated by the court's relating appellant's duty of support to the probationary nature of Pamela's employment. Pamela had been working for N.I.H. since August, 1983; there was no evidence that she was in any danger of losing her job. Whether she was tenured or probationary had no effect on her current level of expenses or her ability to meet those expenses through

her own resources. In terms of her current situation and appellant's current obligation under § 97, her being a probationary employee is completely irrelevant. If, upon attaining tenure at some future time, Pamela is relieved of some of her medical expenses by reason of an employer-provided insurance policy, her need for support (and thus appellant's obligation to provide it) may change; but that has nothing to do with whether appellant has any current obligation.

■ We cannot say what conclusion the court may have drawn had it looked at Pamela's total expenses in light of her resources. The evidence in the record, if fully credited by the court, would seem to support a finding of net need and thus justify an order of support, but it is for the trial court to make the basic findings. In the interest of justice, therefore, we shall remand the case to the Circuit Court, without affirmance or reversal on this issue, for further proceedings. The court must look at Pamela's situation as of September/October, 1984 (unless, by agreement, the parties choose to present updated information and have the matter decided on the basis of Pamela's current situation). In any event, the court must weigh Pamela's total reasonable living expenses against her existing available resources. If it finds a net deficit—a need for parental support—it may then order such support. That support can be ordered in the form of periodic cash payments, provision of insurance, payment of unreimbursed expenses, or some combination, as the court initially did.

### (2) *Counsel Fees*

■ Family Law art., § 12–103(a) authorizes a court to award costs and counsel fees in a case in which a person applies for an order of child support or seeks to recover an arrearage of, or enforce a prior order for, such support. This was such a case.

Section 12–103(b) states: "Before a court may award costs and counsel fees under this section, the court shall consider: (1) the financial status of each party; (2) the needs of each party; and (3) whether there was substantial justification for bringing or defending the proceeding." [5]

In *Staley v. Staley*, 25 Md.App. 99, 112, 335 A.2d 114, *cert. denied* 275 Md. 755 (1975), we viewed this statute as making a person seeking child support payments "a privileged suitor" who was "entitled to counsel fees and court costs...." The "entitled" language may have been a bit extreme, as the statute plainly requires the court to consider the enumerated factors and thus necessarily vests some discretion in the court. The court's focus should be on those factors, however, and its discretion must be exercised liberally in favor of the "privileged suitor."

Here, as we noted, the court focused on none of those factors, but solely on whether there was "an honest dispute." That is not the test.

We are in no position to determine "the financial status of each party" or "the needs of each party." It is clear that, quite apart from whether there was "an honest dispute," there was "substantial justification for bringing ... the proceeding." On remand, the court must reconsider appellee's request based on the statutory criteria.

CASE REMANDED TO CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, PURSUANT TO MD.RULE 1071, WITHOUT AFFIRMANCE OR REVERSAL; APPELLANT FLOYD E. PRESLEY, JR. TO PAY THE COSTS.[6]

---

5. At the time of trial, this section appeared as Md.Code Ann. art. 16, § 5A.

6. We have taxed appellant with the costs because (1) although he may, in the end, be found to have no duty of support, we have rejected the principal arguments made by him in this appeal and (2) appellee had substantial justification to defend the appeal and prosecute the cross-appeal.