57 A.3d 1006

**Edmund A. CUTTS, Jr.**

v.

**Nancy L. TRIPPE.**

**No. 1029, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

Dec. 20, 2012.

Donna McCabe Schaeffer (N. Tucker Meneely, Council, Baradel, Kosmerl & Nolan, PA, on the brief), Annapolis, MD, for appellant.

Alexis E. Kramer (Ewing, Dietz, Fountain & Kehoe, PA, on the brief), Easton, MD, for appellee.

Panel: MATRICCIANI, BERGER, JAMES A. KENNEY, III (Retired, Specially Assigned), JJ.*

BERGER, J.

This case arises from an order of the Circuit Court for Talbot County modifying the amount of child support to be paid by appellant, Edmund A. Cutts, Jr. ("Father"), to appellee, Nancy L. Trippe ("Mother"). The court also found that the parties' eldest child was a destitute adult child, as defined by statute, and that the parties therefore had a continuing obligation to support her. This appeal followed.

Father presents two questions for our review, which we have rephrased as follows:

I. Whether the circuit court erred by finding that the parties' daughter is a destitute adult child under FL §§ 13–101 and 13–102.

II. Whether the circuit court erred by adhering strictly to the child support guidelines contained in FL §§ 12–202 to 12–204 in modifying the parties' support obligations.

For the reasons set forth below, we affirm the judgment of the Circuit Court for Talbot County.

## FACTUAL AND PROCEDURAL BACKGROUND

Father and Mother are the divorced parents of three children. Pursuant to the judgment of divorce, entered on February 3, 2005, the parties have joint legal custody of the children, subject to Father's specified visitation. The divorce decree, which incorporated the terms of a settlement agreement between the parties, required Father to pay $200 per week to Mother for the support of the children. Father was also ordered to provide health insurance coverage for the children.

Mother was required to pay all uninsured health expenses, co-pays, and deductibles up to $1,000 for a single illness or

---

* Judge Christopher B. Kehoe did not participate in the decision to report this opinion pursuant to Md. Rule 8–605.1.

condition, without contribution from Father. Expenses over $1,000 would be paid one-third by Father and two-thirds by Mother. Mother was further ordered to pay the children's costs for private school, special education fees, book costs, room and board, and other private school expenses, without contribution from Father. Both parties' support obligations were set to terminate upon the first to occur for each child: (1) death of the child or parent; (2) marriage of the child; (3) the child becoming self-supporting; or (4) the child turning age 18, except if still in high school, in which case, support would continue until the child's graduation or the child's nineteenth birthday, whichever occurred first.

The oldest child, Sarah, was born on November 23, 1990. She was 19 years old at the time of the child support modification trial. Sarah was diagnosed with mild mental retardation at a young age. She has attended special schools her entire life and requires constant supervision. At the time of trial, Sarah attended a special school in New York for students who have an IQ below 70. When Sarah returns from school for weekends, holidays, and summer breaks, she resides at Mother's home, where she has her own room. Sarah is the beneficiary of a trust with a value of approximately $400,000 ("the trust"). Mother is the trustee of Sarah's trust, and has the sole power to disburse trust funds.

On January 26, 2010, Mother filed a motion to modify child support in the Circuit Court for Talbot County. The first count alleged that Father had failed and refused to provide reimbursements for certain medical and tutoring expenses incurred by the children. The second count sought modification of Father's child support obligations on the basis of material changes in circumstances, including: increases in the children's medical expenses, Mother's substantial loss of annual income, the inability of Sarah to support herself by reason of her disability, and Father's limited exercise of visitation, which placed the primary burden for the children's living expenses on Mother.

On March 8, 2010, Father filed a timely response to the motion to modify child support, and thereafter filed a counterclaim and amended counterclaim. The counterclaim alleged that there had been a material change in circumstances based on the children's attendance at boarding schools, and asked the court to establish a new custody and visitation schedule.

On February 1, 2011, a two day trial commenced. Mother filed a financial statement with the court detailing her monthly expenses for the three children. Mother testified that she pays 10 percent of the tuition for each child, and that her parents pay the balance. Aside from the tuition assistance provided by her parents, Mother testified that she pays for all of the children's other expenses, including food, transportation, clothes, summer camps, and tutors. In 2008, the children's health insurance provider initiated an $1,800 deductible, whereas there previously was no deductible. This deductible increased to $2,400 after December 2008. There was also a decrease in coverage for psychological care, from 80 percent to 20 percent, and increases in co-payment obligations. In the period between 2008 and 2009, Mother testified that she paid between $2,300 and $2,400 in deductibles on the health insurance policy. In the period between 2009 and 2010, Mother paid a similar amount.

As to Sarah in particular, Mother testified that she prepares Sarah's food and coordinates her medical appointments when Sarah is home. Mother partially paid $6,500 for Sarah's orthodontic bill, $603 for Sarah's oral surgery, and $200 to repair a broken orthodontic wire. Mother also introduced medical bills for Sarah totaling $4,520.95, which were related to Sarah's treatment for mild mental retardation.

Father testified that he was paying monthly insurance premiums of $1,112, which was an increase from the monthly premiums of between $500 and $600 charged at the time of the divorce. At trial, Father did not contest the amount of Sarah's orthodontic bills and agreed to be responsible for unpaid balances on those bills. Father, however, testified that he would not contribute to certain other medical expenses

because, contrary to Mother's testimony, he had not been consulted about those expenses in advance.

The parties stipulated that Mother's income for the previous year was $72,601. The recent economic recession had affected Mother's income, resulting in a $90,000 to $100,000 reduction in income due to lost real estate commissions. Father's income for the prior year was $83,425.

The trial court issued a memorandum opinion on June 9, 2011. The trial judge found that Sarah was a destitute adult child within the meaning of Md.Code (1984, 2006 Repl.Vol.), §§ 13–101 and 13–102 of the Family Law Article ("FL"), and was therefore entitled to continuing support from Mother and Father. The court also found that there had been a material change in circumstances due to Mother's decreased salary, which warranted a modification to the parties' existing child support obligations. Accordingly, the trial court calculated the amount of child support for Sarah and for the youngest child using the parties' current incomes.[1] In calculating the amount of support, the trial court adhered strictly to the child support guidelines contained in FL §§ 12–202 to 12–204 ("the Guidelines"). This resulted in an increase in the amount of Father's child support obligations. The trial judge further determined that the increases in healthcare costs did not warrant any departure from the Guidelines, because the increased expenses to each party essentially cancelled each other out. Finally, the trial judge modified Father's visitation schedule and appointed a parent coordinator to orchestrate visitation arrangements.

## STANDARD OF REVIEW

We apply the clearly erroneous standard in reviewing a trial court's determination as to whether a child is a "destitute adult child" under FL §§ 13–101 and 13–102. *Corby v. McCarthy,* 154 Md.App. 446, 840 A.2d 188 (2003) (apply-

---

1. The parties agreed that support would terminate as to the second eldest child during the same month that the memorandum opinion was issued due to the child's graduation from high school.

ing clearly erroneous standard to destitute adult child determination); *Goshorn v. Goshorn,* 154 Md.App. 194, 838 A.2d 1247 (2003). The clearly erroneous standard also applies to the review of modifications of child support. *Ley v. Forman,* 144 Md.App. 658, 800 A.2d 1 (2002) (applying clearly erroneous standard to review of a child support modification). However, "where an order [of the trial court] involves an interpretation and application of Maryland constitutional, statutory, or case law, our Court must determine whether the trial court's conclusions are 'legally correct' under a *de novo* standard of review." *See Schisler v. State,* 394 Md. 519, 535, 907 A.2d 175 (2006).

## DISCUSSION

### I. Destitute Adult Child Determination

Father argues that the trial court erred by determining that the parties' daughter, Sarah, is a "destitute adult child" within the meaning of FL §§ 13–101 and 13–102 for three reasons: (1) failure to consider evidence of Sarah's trust; (2) failure to make specific findings of fact regarding Sarah's reasonable living expenses; and (3) failure to weigh Sarah's expenses against her resources. Mother contends that the trial court did not err because the trust is not a currently available resource, and there was ample testimony regarding the daughter's reasonable expenses upon which to base a finding that she is a destitute adult child. We agree that the trial judge did not err in finding that Sarah is a destitute adult child.

█ Parents have a statutory duty to support an adult destitute child. FL § 13–102 provides, in pertinent part:

(b) Duty to support destitute adult child.—If a destitute adult child is in this State and has a parent who has or is able to earn sufficient means, the parent may not neglect or refuse to provide the destitute adult child with food, shelter, care, and clothing.

(c) Penalties.—A person who violates any provision of this section is guilty of a misdemeanor and on conviction is

subject to a fine not exceeding $1,000 or imprisonment not exceeding 1 year, or both.

A "destitute adult child" is defined as "an adult child who: (1) has no means of subsistence; and (2) cannot be self-supporting, due to mental or physical infirmity." FL § 13–101(b). The Guidelines apply to the establishment or modification of child support under this provision. *Goshorn,* 154 Md.App. at 219, 838 A.2d 1247 (2003) (holding that the child support "guidelines are applicable to destitute adult children").

## A. The Trust

■ We first consider whether a trust constitutes a "means of subsistence." No Maryland court has seemingly addressed this particular issue. We have, however, held that only resources that are currently available to a child should be considered in the destitute adult child analysis. In *Presley,* for example, we emphasized the focus on a child's "current situation," and cautioned that future resources should not be considered in the analysis. *Presley v. Presley,* 65 Md.App. 265, 278–79, 500 A.2d 322 (1985) (holding that the trial court should examine "the child's *available* assets" based on the child's "*current* situation . . . .") (emphasis added). We further explained:

> If, upon attaining tenure [at her job] at some future time, [the child] is relieved of some of her medical expenses by reason of an employer-provided insurance policy, her need for support (and thus appellant's obligation to provide it) may change; but that has nothing to do with whether appellant has any current obligation.

*Id.* at 279, 500 A.2d 322.

Here, the trial court considered the trust, but excluded it from the destitute adult child analysis on the basis that Sarah had no right to access the trust funds, nor had any funds ever been disbursed to Sarah. The trial judge explained:

> [N]o evidence was presented to establish that Sarah has the right to call on any of the trust principal or income for her support. Mother, who is the trustee, may legitimately

exercise her discretion not to distribute trust funds in order to ensure that the financial means to support Sarah continue to exist when her parents are no longer able to provide support.[2]

This is analogous to the situation in *Presley*. Sarah's need for support may change in the future due to the trust, but that has no bearing on Sarah's current need for support. Since the trial judge found that the trust is not currently available to Sarah, the trial court was legally correct in excluding the trust from its analysis. Further, our analysis is underscored by the Maryland Discretionary Trust Act. *See* Md.Code (1994, 2012 Repl.Vol.), § 14–401 *et seq.* of the Estates & Trusts Article ("ET"). ET § 14–402(a)(2) provides that:

Trust property may not be considered property or an available resource of the beneficiary.

Accordingly, we hold that a trust may not be considered as an available resource in the destitute adult child analysis.

**B. Expenses**

■ Father next argues that Mother "utterly failed to produce evidence at trial" of Sarah's "reasonable living expenses," and that the trial judge erred by failing to make findings of fact regarding Sarah's expenses. We disagree.

First, we note that the concept of "reasonable expenses" does not appear in the language of the statute itself. Pursuant to FL § 13–102(b), a parent with sufficient means may not "refuse to provide the destitute child with food, shelter, care, and clothing." In interpreting this language, we explained in *Presley* that we were rejecting the notion that "food, shelter, care, and clothing" could be construed to mean *any* expenses, "no matter how extravagant those expenses might be." *Presley*, 65 Md.App. at 277–78, 500 A.2d 322. We noted that such an interpretation would not be consistent with the legislative

---

**2.** It is noteworthy that there was almost no evidence presented regarding the trust. The trust was not introduced into evidence, and the trial court had no information regarding the trust other than that gleaned from the Mother's testimony.

intent because it is "inconsistent with the very concept of a 'destitute adult child.'" *Id.* Rather, we held that:

> "The child need not be penniless, nor may he be profligate. The duty of support arises when the child has insufficient resources and, because of mental or physical infirmity, insufficient income capacity to enable him to meet his *reasonable living expenses.*"

*Id.* (emphasis added).

In its memorandum opinion, the trial court summarized Sarah's expenses as established through the parties' testimony. Our review of the record shows that the trial judge also considered the reasonableness of these expenses. Mother filed a financial statement with the court listing her monthly expenses for Sarah and the other children. At trial, Father scrutinized each expense, item by item. Father's counsel questioned Sarah's medical expenses as well as the expenses incurred for a diagnostic evaluation performed on Sarah by a PhD, on the basis that a PhD "is not a medical doctor." Mother explained that although not a medical doctor, the PhD was a doctor specializing in children with learning disabilities. Mother further testified that the PhD performed educational testing, and diagnosed Sarah with attention deficit disorder. Father's counsel sought to undermine this explanation by questioning why Sarah was seemingly not put on medication for the disorder until three years later. Mother explained that Sarah was, in fact, put on medication right away, but that there were no prescription expenses submitted initially because Sarah first went through trials of medication and received samples from the doctor.

Next, Father's counsel questioned the transportation expenses listed on Mother's financial statement. Mother explained that the expenses included gas, tolls, hotels, flights, etcetera for transportation for Sarah back to school. Mother testified that about two thirds of the total transportation costs were for Sarah because of the distance to her school in New York. Due to the distance, Mother was required to spend the night in a hotel when taking Sarah to school.

Additionally, Father's counsel questioned the educational expenses. Mother explained that "half of that [amount] was the initial deposit. I know the deposit for Sarah's school is $4,000.... There's also tuition insurance which is two percent of the total cost of tuition ... plus the text books.... You've got, you know, there are other book store supplies, sports equipment, fees for clubs, photography course fees. That's what all these other expenses are."

The trial court also carefully considered the reasonableness of these expenses throughout the trial. For example, Father challenged the reasonableness of expenses for the children's shelter and utilities, arguing that such expenses "are greatly diminished by the fact that [the children are] in boarding school for the vast majority of the year." The trial judge interjected: "Well doesn't [Mother] need a home for [the children] to reside in on the weekends, and vacations[,] and in the summer? It's not like she can downsize to a[n] efficiency apartment." Similarly, the trial judge rejected Father's contention that Mother was not actually paying for Sarah's educational expenses. The court stated:

Well I don't know that it's fair to say that she's not paying for the private school. It's true her parents are paying the bulk of it because that's the tuition. But she's paying the deposit for the tuition and she's paying a myriad of other expenses that come up[,] and having sent a couple kids myself to private school I know that once the tuition check is written that's not the end of it. There are the books and the clubs and the dues and the transportation and the insurance and all that adds up. So it's not like mom has a free ride.

We hold that there was ample evidence and testimony that Sarah is incurring reasonable expenses that trigger parental support under the destitute adult child statute. In our view, the trial court was not clearly erroneous in structuring its memorandum opinion with a summary of the reasonable expenses incurred based on testimony, rather than explicit findings of fact regarding the expenses.

## C. Balancing Test

██ Finally, Father argues that the trial court erred in its application of the destitute adult child statute by failing to compare Sarah's expenses to her resources. We hold that the trial court applied the proper standard.

██ We begin our analysis by revisiting the applicable statutory language. A "destitute adult child" is defined as "an adult child who: (1) has *no means of subsistence;* and (2) cannot be self-supporting, due to mental or physical infirmity." FL § 13–101(b) (emphasis added). We have extended this definition to include not only individuals with no means of subsistence, but also those with expenses that exceed their resources. *See, e.g., Presley,* 65 Md.App. 265, 500 A.2d 322 (child with income of $14,200 qualified as a destitute adult child); *Corby,* 154 Md.App. 446, 840 A.2d 188 (2003) (child with income of $22,000 qualified as a destitute adult child). Thus, the mere fact that an adult with physical or mental infirmities has a job or other source of income is not an automatic bar to parental support. In cases where a child has financial resources, "the court must weigh [the child's] total reasonable living expenses against her existing available re-sources. If it finds a net deficit—a need for parental sup-port—it may then order such support." *Presley,* 65 Md.App. at 279, 500 A.2d 322. Upon finding a deficit, the resulting order of support is to be calculated based upon the Guidelines. *Goshorn,* 154 Md.App. at 219, 838 A.2d 1247.

In concluding that Sarah qualified for support as a destitute adult child, the trial court, in a memorandum opinion, ad-dressed the statutory requirements of FL §§ 13–101 and 13–102, as well as our interpretation of these provisions in *Pres-ley.* The court first summarized the testimony regarding Sarah's medical, educational, and general living expenses. The court then addressed Sarah's resources and ability to provide for herself. The court determined that Sarah was unable to provide for herself, and that she had no available resources or capacity to work due to mental infirmity. Addi-tionally, the court set out the parties' incomes, and found and

that Mother's and Father's incomes were "sufficient to provide for Sarah's support." Accordingly, the court concluded that Sarah is a destitute adult child within the meaning of the statute, and therefore entitled to continuing child support. The court calculated the amount of support based on the Guidelines.

Father concedes on appeal that Sarah meets the requirement of the second prong of FL § 13–101(b); namely, the inability to be self-supporting due to mental infirmity. Thus, as Father points out, "this case turns on whether Sarah has 'no means of subsistence' " under FL § 13–101(b).

In our view, Sarah fits the classic statutory definition of "destitute," and therefore a balancing analysis was unnecessary. The trial court determined, based on testimony, that Sarah had no job, received no disability benefits or other assistance, and had no other available financial resources. Thus, by definition, Sarah is destitute—she has "no means of subsistence." FL § 13–101(b). Accordingly, under these circumstances, there was no need for the trial judge to go any further and weigh Sarah's financial resources against her expenses, because there were simply no financial resources to consider. The purpose of establishing the balancing test in our prior decisions was not to impose a formulaic straight-jacket on trial judges, but rather to extend support to those who otherwise would not qualify under the plain language of the destitute adult child statute. For that reason, *Presley* and *Corby* recognized that parents have a duty to support not only adult children with "no means of subsistence," but also those with insufficient financial resources. In sum, there are two types of individuals who qualify as destitute adult children under the statute. First, there are those with no financial resources or earning capacity, and thus by definition destitute. Second, there are individuals who have financial resources, but nevertheless are destitute due to a net deficit between reasonable living expenses and financial resources—a finding that can only be ascertained by conducting a balancing analysis.

Our rationale is bolstered by several important considerations. First, requiring courts to go through the motions of a balancing test in cases where a child has no source of income would be meaningless; if a child has no resources whatsoever, any showing of reasonable expenses will, by default, constitute a deficit. Second, our prior cases addressing this statute, such as *Presley* and *Corby*, involved children with jobs, and thus required a different analysis than the instant case. Accordingly, we hold that the trial judge applied the proper standard in determining that Sarah constituted a destitute adult child.

## II. Child Support Modification

Father argues that the trial judge failed to find that the children's significantly reduced time at Mother's home was also a material change in circumstances that warranted a reduction in his child support obligations. Father also argues that the trial judge erred by failing to consider Sarah's trust, and, as a result, erred by adhering strictly to the Guidelines in determining Father's support obligation.

A trial court may modify a party's child support obligation if a material change in circumstances has occurred which justifies a modification. *Ley v. Forman*, 144 Md.App. 658, 665, 800 A.2d 1 (2002). "Once a material change in circumstances has occurred, the court must apply the guidelines in [Sections] 12–202 to 12–204 of the Family Law Article to determine the level of support to which the child is currently entitled." *Rivera v. Zysk*, 136 Md.App. 607, 619, 766 A.2d 1049 (2001). Under FL § 12–202(a)(2)(i), "[t]here is a rebuttable presumption that the amount of child support which would result from the application of the child support guidelines . . . is the correct amount of child support to be awarded." In order to rebut that presumption, a party must produce "evidence that the application of the guidelines would be unjust or inappropriate in a particular case." FL § 12–202(a)(2)(ii). *See also Corby*, 154 Md.App. at 496, 840 A.2d 188 (the trial court "is vested with discretion that allows it to depart from the strict application of the Guidelines under certain circumstances."). On appeal, we recognize that the decision

"[w]hether to grant a modification rests with the sound discretion of the trial court and will not be disturbed unless that discretion was arbitrarily used or the judgment was clearly wrong." *Ley,* 144 Md.App. at 665, 800 A.2d 1 (citing *Dunlap v. Fiorenza,* 128 Md.App. 357, 363, 738 A.2d 312 (1999)).

## A. Boarding School Attendance

 Father first contends that the fact that the children spent significant time at boarding schools amounted to a material change in circumstances. As such, Father argues that the court should have only awarded one third of the Guidelines support amount to reflect the amount of time that the children actually spend at Mother's home. The trial judge rejected this argument, observing that: "Well doesn't she need a home for them to reside in on the weekends, and vacations[,] and in the summer? . . . . It's not like she can downsize to a[n] efficiency apartment." Additionally, the trial judge observed:

> [Mother is paying] a myriad of other expenses that come up[,] and having sent a couple kids myself to private school I know that once the tuition check is written that's not the end of it. There are the books and the clubs and the dues and the transportation and the insurance and all that adds up. So it's not like mom has a free ride.

Father does not dispute that the children reside at Mother's home on weekends, holidays, and summer breaks. We, therefore, hold that the trial court was not arbitrary in its decision, nor was it "clearly wrong" to decline to depart downward from the Guidelines in this situation.

## B. The Trust

Finally, Father argues that the trial court should have considered Sarah's trust, and on that basis departed downward from the Guidelines. Although it is true that in "determining the amount of support, the court shall consider the financial circumstances of the individual," the trust was properly excluded from the analysis because it is not an asset

currently available to Sarah.[3] If trust funds are made available to Sarah in the future, that would constitute a material change warranting a child support modification. At that point, it would be appropriate to consider the trust in determining child support obligations. Accordingly, the trial court did not err by excluding the trust from its analysis.

For the foregoing reasons, we affirm the judgment of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR TALBOT COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

3. *See supra,* Part I(A), discussing the trust analysis in detail.