**O'CONNOR, Appellee,**

v.

**O'CONNOR, Appellant.**

[Cite as *O'Connor v. O'Connor* (1991), 71 Ohio App.3d 541.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–527.

Decided March 26, 1991.

*George W. Gross,* for appellee.

*Chieffo & Minnillo* and *Dominic J. Chieffo,* for appellant.

---

Evans, Judge.

Defendant appeals from a judgment of the Franklin County Common Pleas Court, Division of Domestic Relations, ordering defendant to pay the sum of $940 per month as child support for his adult daughter. The judgment also ordered defendant to provide his daughter with a medical insurance policy.

Plaintiff Loretta O'Connor filed on January 24, 1986, a complaint for divorce against defendant John P. O'Connor on the ground that the parties had lived separate and apart without cohabitation for a period of more than one year. At the time the complaint was filed, their children, including daughter Laurie, were adults. Subsequently, the parties reached an agreement as to the terms of their divorce, which agreement was journalized as the decree of the court on September 24, 1986. The decree recited the court's finding that Laurie, then age twenty-five, was at times incompetent and unable to provide for her own support and maintenance, as a result of which plaintiff had been appointed guardian of the estate and person of Laurie. The decree further recited that defendant and plaintiff had reached an agreement regarding the support of Laurie, which specified:

" * * * Defendant shall be responsible for all of Laurie's support over and above her income and other assets available to her, and the Plaintiff shall remain as the legal guardian of the person of daughter, Laurie, and the Defendant shall be the guardian of the property and income of daughter, Laurie."

In May 1987, plaintiff moved the domestic relations court for an order finding defendant in contempt for failing to provide any support for Laurie and for an order setting a specific amount of support to be paid by defendant. The matter was resolved when the parties agreed in December 1987 that defendant would pay Laurie $1,200 per month for six months, after which time the parties would review the payments. When the parties were unable to agree at the end of the six-month period on the amount of support to be paid by defendant, plaintiff moved the domestic relations court in October 1988 for an order to set a specific level of support.

The matter was referred to a referee of the domestic relations court who heard the matter in February 1989 and rendered a report in March 1989. The referee recommended that defendant be ordered to pay $940 a month as support for Laurie in addition to an order requiring defendant to provide Laurie a policy of medical insurance. The referee specifically found that the domestic relations court had jurisdiction over the matter when the agreement regarding defendant's obligations to support his adult daughter was journalized in the divorce decree. The referee went on to find that Laurie was in need of support and, based upon the relevant factors enumerated in R.C. 3109.05 and the factors listed in the Child Support Guidelines under C.P.Sup.R. 75, set the level of support at $940 per month.

The trial court, prior to the expiration of the fourteen-day period for filing objections, adopted the report of the referee as the judgment of the court. Because defendant timely objected to the report and recommendation, this court dismissed defendant's appeal as premature. *O'Connor v. O'Connor* (Feb. 20, 1990), No. 89AP–531, unreported, 1990 WL 14811.

Upon remand, defendant withdrew his objections and the trial court again adopted the report and recommendation of the referee as the judgment of the court on April 9, 1990. This timely appeal followed. Defendant sets forth the following assignments of error:

"I. The trial court lacked jurisdiction in the original instance over an emancipated adult offspring.

"II. The trial court erred in finding that the memorandum of agreement entered into between the parties did not suspend and modify the agreed judgment entry.

"III. The trial court erred and abused its discretion in that it lacked authority and jurisdiction to 'fix' child support for the emancipated adult in this matter.

"IV. The trial court erred in its finding that the defendant-appellant had the burden of proving that there was no longer a need for support.

"V. The amount of child support fixed by the trial court was against the manifest weight of the evidence and contrary to law."

██ Under defendant's initial assignment of error, he challenges the jurisdiction of the domestic relations court to order him to pay support for his adult daughter. Defendant's challenge to the jurisdiction of the domestic relations court suggests that the court lacked subject-matter jurisdiction over the parties' initial agreement.

██ Generally, a domestic relations court has no authority to order child support for an adult child over whom it has no jurisdiction, even if the parents of such child fail to contest the exercise of such jurisdiction. *Miller v. Miller* (1951), 154 Ohio St. 530, 43 O.O. 496, 97 N.E.2d 213, paragraphs three and four the syllabus. However, a domestic relations court does have the authority to give effect to the parties' agreement entered into during the proceedings by incorporating their agreement into the decree, even if the court otherwise would not have the power to make such decree. *Robrock v. Robrock* (1958), 167 Ohio St. 479, 5 O.O.2d 165, 150 N.E.2d 421, paragraph four the syllabus. Thus, where the father reaches an agreement during the proceedings with the custodial mother to provide support for their incompetent adult child, the domestic relations court may incorporate the agreement into decree and give the agreement the force of law. *Sedam v. Sedam* (1948), 52 Ohio Law Abs. 141, 78 N.E.2d 914.

In light of these principles, the facts of this case indicate that the parties agreed during the divorce proceedings that defendant would provide support for his incompetent adult child. The domestic relations division, although having no power to order such support in the first instance, may nevertheless give effect to the parties' agreement in a subsequent proceeding.

This court notes, however, that defendant is correct in asserting that the holding of *Castle v. Castle* (1984), 15 Ohio St.3d 279, 15 OBR 413, 473 N.E.2d 803, is distinguishable from this case. In *Castle*, the domestic relations court initially had jurisdiction over the parties' incompetent *minor* child. The Supreme Court stated that once jurisdiction was properly asserted over the minor child, the domestic relations court retained jurisdiction to provide continuing child support after the child attained majority. *Id.* at paragraph two of the syllabus. In this case, the domestic relations court never had jurisdiction over Laurie. Thus, the holding of *Castle* is inapposite. Nevertheless, for the reasons stated above, the domestic relations court did have jurisdiction to enforce the parties' agreement reached by them during their divorce which required defendant to provide support for Laurie. The first assignment of error is overruled.

Under his second assignment of error, defendant asserts that the parties' memorandum of agreement reached on December 3, 1987, was intended to supersede the prior decree regarding defendant's agreement to support Laurie. Defendant contends that the domestic relations court erred in refusing to give any effect to this agreement merely because that agreement was never journalized as an order of the court.

Contrary to defendant's argument, however, the trial court did not premise its decision solely on the parties' failure to journalize the December 1987 memorandum of agreement. Rather, the domestic relations court concluded that, even if the agreement did not require journalization, it did not terminate defendant's duty to support Laurie under the terms of the original decree. The trial court found that the memorandum specifically required the parties to review the support defendant was obliged to pay at the end of the six-month period provided for in the agreement. Our review of the agreement supports this finding. The agreement states:

"John O'Connor does agree that he will cause to be paid the sum of $1,200.00 per month for a period of six (6) months to the benefit of Lauria [*sic*] O'Connor. Said sum shall be in the form of a dividend from the J.P. O'Connor Company of North Carolina, Inc. After the six (6) full months of said payments, the parties mutually agree to review Laurie's status at that time to determine whether and to what extent said payments shall continue."

Rather than suggesting that defendant's initial agreement to support Laurie was superseded by this memorandum, the subsequent agreement reflects a modification of their prior agreement such that the level of support was expressly stated for a period of six months. At the end of that time, the parties agreed to review Laurie's need for support and to adjust defendant's obligation accordingly. The second assignment of error is overruled.

■ Defendant next argues, by way of his third assignment of error, that the trial court lacked authority to set the level of support for Laurie absent the parties' agreement as to the amount. Since the agreement required only defendant to be responsible for Laurie's support, defendant maintains that the trial court's only power was to order him to be responsible.

As stated previously, when the parents of an adult incompetent child agree during the divorce proceedings to provide for that child's support, the domestic relations court may incorporate their agreement and give it effect. *Sedam, supra*. While an agreement which fails to set a definite and certain amount for support is not enforceable in contempt, *Hardin v. Hardin* (1952), 65 Ohio Law Abs. 538, 115 N.E.2d 167, the court may, as with any contract, ascertain indefinite or uncertain terms to give meaning to the agreement. Cf.

*Oglebay Norton Co. v. Armco, Inc.* (1990), 52 Ohio St.3d 232, 235–237, 556 N.E.2d 515, 518–521.

Here, defendant agreed to " * * * be responsible for all of Laurie's support over and above her income and other assets available to her. * * * " Although defendant did not agree to provide a specific amount of support, it is reasonable to presume, absent evidence to the contrary, that the parties contemplated that Laurie's support be based upon traditional items of support. Those items are specified in R.C. 3109.05(A) and supplemented by the Ohio Child Support Guidelines outlined formerly in C.P.Sup.R. 75 and currently in R.C. 3113.215. We find these statutory provisions to be sufficiently definite to allow the trial court to give effect to the parties' agreement incorporated into the decree. The trial court properly ascertained Laurie's need for support by utilizing C.P.Sup.R. 75 in order to give meaning to the parties' agreement. The third assignment of error is overruled.

Under his final two assignments of error, defendant argues that the order of support rendered by the trial court is contrary to the evidence. Defendant maintains in his fourth assignment of error that the trial court erroneously shifted the burden of proof from plaintiff to him on the issue of Laurie's continuing need for support. It is defendant's position that because the memorandum of agreement superseded the decree, plaintiff assumed the burden of proving under that agreement that Laurie was in need of support. Since the parties' testimony on this issue was conflicting, defendant concludes that the trial court erred in giving weight to plaintiff's unsubstantiated assertions regarding Laurie's need for support.

Even assuming, without deciding, that the trial court erroneously imposed on defendant the burden of proving that Laurie no longer required his support, any error was nonprejudicial. Plaintiff's testimony regarding Laurie's ability to support herself included an unrebutted assertion that Social Security had ruled her to be completely disabled. The record also unequivocally demonstrates that plaintiff is the legally appointed guardian of Laurie's person and estate because Laurie is at times incompetent. This evidence is competent and credible evidence to support the finding of the trial court that Laurie is in need of defendant's support. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. The fourth assignment of error is overruled.

Finally, defendant contends under the fifth assignment of error that the amount of child support ordered was contrary to the weight of the evidence. Defendant maintains that the order of $940 per month is such a substantial departure from the provisions of C.P.Sup.R. 75 that reversal is warranted. More precisely, it is defendant's position that the trial court failed to explain

its departure from the guidelines, as required by C.P.Sup.R. 75(A), and failed to include in its calculations Laurie's Social Security income of $278 per month.

Contrary to defendant's argument that the trial court failed to explain the basis of its decision or that it failed to include Laurie's Social Security income in calculating the amount necessary for her support, the referee's findings adequately address both issues. Specifically, the referee stated:

"At the time of the divorce of the parties, Defendant was engaged in a voluntary bankruptcy. Prior to that bankruptcy, he had transferred his shares of stock in the J.P. O'Connor Company of N.C., Inc. to a trust and he represented in his bankruptcy petition that the stock had no value at the time of the transfer. During a deposition taken pursuant to the divorce action, he testified that the stock could never 'come back' to him. He had non-discharged debts of $717,575.10 which he characterized as contingent liabilities, other debts totalling $19,418.16 which he described as accounts payable, and monthly estimated living expenses of $3,370.00 of which $2,000 was monthly attorney fees. His income was represented as $48,000 per year, gross.

"The assets of the Plaintiff at the time of the divorce were not the subject of a bankruptcy action (as were Defendant's) and, therefore, no comprehensive record of them is available within the Court's file. However, Plaintiff's debts at the time of the divorce were listed as VISA ($699.02), bank utilities ($329.65), Dr. Lichlider ($45.00), Lazarus ($98.95), Hunter & Grace, Attorneys ($1,900) and one month's rent ($750). Plaintiff's personal monthly living expenses were represented by her to be $2,716.24 and her income was represented as a net of $60.00 per week with a gross in 1985 (the last full year prior to the divorce) of $3,500.00.

"Defendant has remarried and his present wife is not now employed. He continues to draw a salary from the J.P. O'Connor Company which is now $5,000.00 per month. He testified that his income for 1988 was also $5,000.00 per month and in 1987 it was $4,000.00 per month initially and was raised to $5,000.00 during that year. However, his 1987 income tax return indicates a gross income of over $105,000.00 with no income tax payable. He explained part of the difference between his monthly income and his total annual income in 1987 as 'noncash bonus' charged to him but paid to others (including his son). He also indicated that he was charged with a capital gain in 1987 totalling $9,000.00 for which he actually received no funds. Defendant admitted he purchased his son's stock in the J.P. O'Connor Company (and held in trust), but did not specifically relate his son's 1987 excused, noncashed bonus to that purchase. He indicated that in his previous deposition, he had

meant to say that the stock couldn't come back to him *unless* he purchased it. The Referee specifically finds that Mr. O'Connor's verocity [*sic*] was put in serious question by his testimony on this subject.

"Defendant testified that he had no idea as to whether his 1988 tax return would show less, more or the same income as he had reported in 1987, but he did indicate that he had an income tax credit of over $700,000. As a practical matter, this means that the Defendant will pay no income tax on the next $700,000 he declares as income. In addition to his regular salary, his corporation has provided him with a 1988 Acura automobile, including all taxes, insurance, maintenance, oil[,] gas and upkeep for that vehicle. In addition, all his business travel expenses are reimbursed by the corporation and memberships are provided to him for three county clubs (including the Scioto County Club) and for the Athletic Club of Columbus. Although he admits he is the chief executive officer of the corporation, he testified that he had no idea of the value of those memberships and he swore that he did not know if the corporation funded a retirement plan for him. He also swore that all of these employment benefits were part of his 1986 employment benefits also. Defendant further testified that he purchased his present home for $140,000 from the corporation and that he provided a 'purchase money note' in the amount of $18,831 as the down payment. No testimony was offered as to the terms for the repayment of that note. Aside from the 1988 Honda automobile purchased for his wife, Mr. O'Connor testified that the only other asset he has acquired since his divorce is about $2,500.00 in savings. His current monthly expenses were described as totalling $5,740.57 (including $1,300 alimony) according to Defendant's Exhibit B, and he shows current debts totalling $486,500 according to Defendant's Exhibit C. Several of those debts were discharged and then reaffirmed following bankruptcy.

"The Plaintiff continues to work for Columbus Bookkeeping Service where she earned a gross income in 1988 of $9,190.85. She has no additional income except for her alimony of $1,300.00 per month and a small amount of interest on her bank accounts which interest totaled less than $150.00 in 1988. Although Plaintiff occasionally works a full week, her responsibilities for the care of her daughter and certain medical problems, usually limits her to between 23 and 27 hours per week.

"Plaintiff's monthly expenses (not including Laurie's medical bills) total in excess of $2,185.00 and include her house payment of $649.00, utilities of $195.31, groceries and paper products of $430.00, hairdresser $22.00, uninsured medical and medicine of $86.70, therapist of $160.00, household maintenance of $51.26, newspaper of $12.11, auto expenses of $400.18, entertainment of $60.00, home insurance of $20.92, clothing of $62.00, vet bills of $11.93,

attorney fees of $100.00, life insurance of $6.37 on her own life, life insurance on Defendant's life payable to Laurie of $108.50, TWIG dues of $8.75, IRS (for taxes past due on alimony) of $50.00. In addition to these expenses, the Plaintiff must purchase medical insurance for herself beginning in November, 1989. Further, these expenses do not include 'child care' for Laurie which has averaged over $400.00 for the five months immediately preceding the hearing, nor a vacation budget of $100.00 per month for which no funds have been available. Further, Plaintiff anticipates the replacement of her used automobile and expects payments on that vehicle to be at least $250.00 monthly.
" * * *

"The *Bachert* [v. *Bachert* (Dec. 13, 1988), Franklin App. No. 87AP–1086, unreported (1988 Opinions 4330) ] case also provides assistance in the analysis of the factors applicable to the setting of child support for an unemancipated adult. Since there was evidence admitted in the case at bar establishing that Laurie receives social security disability income of $278.00 per month, it is helpful that the adult child in *Bachert* was also a social security recipient. The analysis provided by Judge Hixon concludes that so long as the Court considers the social security payments and all other relevant factors, including those set forth in R.C. Section 3109.05, the Ohio Child Support Guidelines can be used in the process of setting child support for an unemancipated adult. When considering all such factors, including the guidelines, this Referee recommends that the Defendant pay the sum of $940.00 per month, plus poundage, as and for the support of Laurie, effective October 12, 1988. * * * " (Emphasis *sic.*)

Clearly, the referee's findings, as adopted by the trial court, provide a rather detailed explanation by the referee as to why Laurie's support was set at $940 monthly. Moreover, the referee specifically considered Laurie's Social Security income in ascertaining the amount necessary for her support. These factors are supported by the testimony of plaintiff and defendant, as well as the exhibits admitted during the hearing. The findings of the trial court are supported by competent and credible evidence. The fifth assignment of error is overruled.

Having overruled all assignments of error, the judgment of the domestic relations court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and MCCORMAC, JJ., concur.

RICHARD I. EVANS, J., of the Coshocton County Common Pleas Court, sitting by assignment.