In 1992 the parties were divorced by the Mobile County Circuit Court. The mother was awarded custody of the parties' two children, an 18-year-old daughter and a 14-year-old son. The father was ordered to pay, among other things, $1,525 per month in child support, post-minority educational support, and $175,000 as alimony in gross.
In 1993, when the daughter reached the age of nineteen, the father's child support *Page 250 
obligation was reduced to $900 per month. In May 1996 the son broke his neck while at the beach. Following his hospitalization, he was transported to a rehabilitation and retraining center in Atlanta. As a result of his accident, the son is a quadriparetic, which means that he can move his arms and legs, but has weakness in some, if not all, of his limbs. The father's medical insurance paid for the son's stay at the rehabilitation center; however, after a certain length of time, the father's insurance company determined that the son's stay at the rehabilitation center was no longer medically necessary and refused to pay any more charges for inpatient rehabilitation at that facility. The son was discharged from the facility, and there was a four-day time period from the son's discharge until he began an outpatient rehabilitation program. The mother had the son transferred to a hospital for those four days. The father's insurance company denied coverage for the son's hospital stay, and the mother paid for that expense. The father refused to pay for the son's hospital stay because, he said, it was not medically necessary and was not a valid medical expense.
On December 19, 1996, the mother filed a motion to require the father to pay the son's uninsured medical expenses, an attorney fee, and court costs. The father answered, denying that he had failed to pay any uninsured medical expenses. The mother filed an amended motion, requesting that the trial court modify the divorce judgment and order the father to pay for the son's already incurred special medical expenses and for the son's health insurance after he reached the age of majority. The father answered and cross-petitioned for a modification, requesting that the trial court order all noncovered medical expenses to be divided equally between him and the mother.
Following oral hearings, the court entered a judgment, ordering the father to pay the mother $785 per month post-minority support, in addition to the post-minority educational support ordered in the original divorce judgment, and a $2,000 attorney fee. The court also ordered the father to reimburse the mother $22,794 (a percentage of the cost of the son's four-day hospital stay, a percentage of the cost of the son's van, and a percentage of the cost of the renovation of the mother's house). The court ordered each party to pay one-half of the cost of the conversion of the son's van, if the son's trust fund did not pay for the conversion. The court further ordered the mother to pay the first $1,200 of the son's noncovered medical expenses and the father to pay any remaining noncovered medical expenses.
The father appeals, contending that the trial court erred in ordering him to pay post-minority support and in ordering him to reimburse the mother $22,794.
The son testified that his shoulder and arm movements are normal, except for weakness in his triceps, and that his left side is weaker than his right side. He also stated that his left hand is weak, that he has only dull and first finger movement in his left hand, and that he can propel his wheelchair with his left hand. The son cannot stand without assistance, and he cannot walk; however, he is being fitted with leg braces to enable him to stand. The son goes to physical therapy four times a week. He testified that he anticipates going to physical therapy for a long period of time. The son also stated that he can get in and out of his wheel chair unassisted, that he sleeps in a regular queen-size bed, that he can catheterize himself, that he takes care of his basic grooming, and that his mother assists him with dressing and undressing and with his bowel therapy.
The son is a full-time student at the University of South Alabama. He testified that once modifications are made to his van, he will be able to drive himself to and from school. The son also testified that at this time, he cannot live alone and has no financial resources to support himself. He also stated that he is employable, but has *Page 251 
not looked for a job because he is a full-time, pre-med student. The son admitted that he is able to go out with his friends and has gotten in trouble for staying out past his curfew. He also testified that the father had purchased a computer for him and was helping him learn to use it.
The mother testified that the son is in a wheelchair, is permanently disabled, and cannot live alone. She testified that she and her husband care for the son and that she had modified her house to accommodate the son's wheelchair. Specifically, she widened three doorways to accommodate the son's wheelchair, removed a closet to allow the son access to a bathroom, and installed a "roll-in" (a wheelchair accessible) shower in the bathroom. She also testified that she purchased a van for the son's use and equipped it with a wheelchair lift. The mother stated that she plans to modify the van to allow the son to drive the van. She testified that she drives the son to and from college every day and that she uses the son's van because it is equipped with a wheelchair lift. The mother also testified that once the van is modified, the son will be able to drive.
The mother testified that she asked the father to pay for the son's van, which cost $15,416; for the modifications to the van, which have not been made; and for the renovations to her house, which cost $8,660. The father refused to pay for those expenses. She also stated that she pays a physical therapy student $30 per week, in cash, to exercise and stretch the son's muscles.
The mother testified that the son is not independent or employable. She also stated that the father should continue to pay child support, in addition to post-minority educational support, because, she says, the son needs to pay his expenses, to pay her rent, and to pay for the food that she provides. The mother also testified that the father should be responsible for all of the son's expenses and that she should not be responsible for any expenses because, she says, she takes care of the son and does not work.
On cross-examination, the mother admitted that she had quit her job before the son's injury and that in 1995, she earned $95,870. The mother also admitted that she received large sums of monies in the divorce settlement and that the father's medical insurance had paid for most of the son's medical expenses. She testified that she was awarded the marital home, which she sold, and that she used the proceeds to purchase another house. The mother further admitted that she has $32,000 in a "Kemper" account, $110,000 in an IRA, and two joint checking accounts with her current husband, which contain approximately $1,500. She also stated that she received child support for both children while the daughter attended college in Birmingham and that the father paid for the daughter's college expenses.
The father testified that he is a podiatrist, who practices as a corporation and has an annual salary of $84,000. He also stated that he has a profit sharing retirement plan, to which his corporation contributes, and that he sometimes receives a bonus. The father's corporation pays for his medical insurance, which also provides coverage for the son's medical expenses. In addition to his salary, the father receives dividends from investments, and in 1996 the father received $10,000 in capital gains income.
The father testified that he paid $900 per month in child support before his son's accident and that he stopped paying child support on his son's nineteenth birthday. He also testified that he pays for the son's college expenses. The father testified that before the accident, his son had a vehicle, a "Trooper." The father testified that he told the mother, if she would sell the vehicle and apply the proceeds to purchase the van, he would pay any remaining monies owed on the van. The mother refused to sell the vehicle; instead, she sold her husband's van and gave her husband the "Trooper." The father stated that he did *Page 252 
not pay for the renovations to the mother's house or for the van because he did not consider them to be medical expenses. The father also stated that the mother presented him with bills for prescription drugs, which he did not pay, because, he said, each individual bill was less than $100 and the mother is responsible for any medical bills less than $100. He testified that the son is eligible for SSI benefits since the father's child support obligation has ended and that the son has $32,000 in a trust fund, of which the father is the trustee. The father stated that the paternal grandmother established the son's trust fund and that she intended for the trust monies to pay for the son's college education.
The son's doctor, Dr. James L. Perrien, a neurologist, testified by deposition that the son cannot live alone because he needs assistance getting in and out of his wheelchair, getting dressed, and catheterizing himself. Dr. Perrien stated that he got his information about the son's abilities from the mother. However, he stated that the mother had not informed him that the son was performing these tasks. He also stated that the son could be independent if he could do the aforementioned tasks and could drive himself. Dr. Perrien further testified that the son is permanently disabled, but is employable.
In Alabama, the general rule is that a trial court has no jurisdiction to require a parent to provide support for a child who has reached the age of majority. Whitten v. Whitten, 592 So.2d 183 (Ala. 1991). However, there are two exceptions to the general rule: (1) when an adult child is so mentally or physically disabled that he cannot support himself, Ex parte Brewington, 445 So.2d 294 (Ala. 1983), and (2) when application for post-minority educational support is made before the child reaches the age of majority. Ex parte Bayliss, 550 So.2d 986 (Ala. 1989).
The record is devoid of any evidence that the son suffers from any mental disability. Although the record is replete with evidence that the son is disabled, the full extent of his disability is unknown at this time. The evidence reflects that the son is employable, although he has not looked for employment because of his pre-med studies. Based upon our review of the record, we conclude that the mother presented substantial evidence that the son is so physically disabled that he is unable to support himself; therefore, the trial court correctly ordered the father to pay post-minority support for the son.
Rule 32(C)(4), Ala. R. Jud. Admin., allows a trial court to make additional awards in excess of the basic child support obligation for extraordinary medical, dental, and educational expenses if (1) the parties have agreed in writing to such awards, or (2) the court determines that such awards are in the best interests of the child and states its reasons for making such additional awards. "[This subsection] require[s] the trial court to state a reason justifying the additional [award]." DeMo v. DeMo, 679 So.2d 265, 267 (Ala.Civ.App. 1996). In this case the trial court ordered the father to pay a percentage of the son's four-day hospital stay, which was not covered by insurance; a percentage of the cost of the son's van; and a percentage of the cost of the renovation of the mother's house. Pursuant to the divorce judgment, the father was responsible for all "uninsured medical and dental expenses" exceeding $100, which the children incurred. The trial court could have determined that the renovations to the mother's house were for the benefit of the son. Further, the mother purchased the van to transport the son. Therefore, we conclude that the trial court did not err in ordering the father to pay an additional award of $22,794.
The judgment of the trial court is affirmed.
The mother requests an attorney fee and costs on appeal. That request is denied. *Page 253 
The foregoing opinion was prepared by Retired Appellate Judge L. Charles Wright while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala. Code 1975.
AFFIRMED.
All the judges concur.