763 So.2d 253 (1999)
Ex parte Laurence H. COHEN.
(In re Laurence H. Cohen v. Jill M. Cohen Baker).
1971347.
Supreme Court of Alabama.
December 22, 1999.
W. Gregory Hughes, Mobile, for petitioner.
Robert E. Gibney, Mobile, for respondent.
PER CURIAM.
Dr. Laurence H. Cohen appealed to the Court of Civil Appeals from a judgment ordering him to pay postminority support *254 for a disabled child and to pay a percentage of certain extraordinary expenses the mother had incurred for the child's benefit. The Court of Civil Appeals affirmed the judgment of the trial court; see Cohen v. Baker, 763 So.2d 248 (Ala.Civ.App.1998). We granted Dr. Cohen's petition for certiorari review. We affirm the judgment of the Court of Civil Appeals in part, reverse it in part, and remand.

I. Factual Background
Dr. Cohen and Jill M. Cohen Baker were divorced in 1992. The divorce judgment awarded custody of their 18-year-old daughter and their 14-year-old son, Joshua, to the mother and ordered the father to pay $1,525 per month in child support and postminority educational support. When the daughter reached the age of majority in 1993, the father's child-support payments decreased to $900 per month.
Shortly after graduating from high school in 1996, Joshua broke his neck while at the beach. As a result of the accident, Joshua is quadriparetic, i.e., he can move his arms and legs, but has weakness in them. Joshua testified that the strength and range of motion of his arms and shoulders are normal, except for weakness in his triceps. He also testified that his left side is weaker than his right. Joshua added that he has only limited use of the fingers on his left hand; however, he said, this limited use of his fingers does not prevent him from propelling his wheelchair. Joshua is unable to stand without assistance, although he hopes that in the near future he can be fitted with special leg braces that will enable him to stand. He is able to get in and out of his wheelchair without assistance and is able to attend to some, but not all, of his personal needs.
To accommodate Joshua's needs, the mother has renovated her home; the renovations include widening three doorways, removing a closet to allow Joshua access to a bathroom, and installing a wheelchair-accessible shower in that bathroom. The mother testified that she purchased a van for Joshua's use and had the van equipped with a wheelchair lift. She added that she planned to have the van's controls modified so that Joshua would be able to drive it himself.
Joshua is enrolled as a full-time student at the University of South Alabama in a pre-med program. He testified that he hoped to transfer to Auburn University soon. He stated that he has a personal computer; the record indicates that he is skilled in its use. He said he enjoys many of the normal aspects of life, such as going out with friends. He was not employed at the time of the hearing, but the record does not make it clear whether his unemployment was the result of his status as a full-time student or was the result of his disability. Joshua's neurologist testified that although Joshua is permanently disabled, he is employable. Both Joshua and his mother testified that he is unemployable. The father testified that Joshua is eligible for Social Security benefits.
On December 19, 1996, the mother filed a motion asking the trial court to require the father to pay the son's medical expenses that were not covered by insurance, and she asked for an attorney fee and court costs related to that motion. The father answered, denying that he had failed to pay any uninsured medical expenses. The mother amended her motion to request that the trial court modify the parties' divorce judgment and order the father to pay for Joshua's previously incurred special medical expenses and to pay for his health insurance after he reached the age of majority. The father answered by requesting the court to order that responsibility for all medical expenses not covered by insurance be divided equally between him and the mother.
After a hearing, the trial court ordered the father (1) to pay $785 per month in postminority support; (2) to pay the mother $22,794 to reimburse her for a percentage of certain extraordinary expenses she *255 had incurred on Joshua's behalf that were related to his disability; and (3) to pay $2,000 in attorney fees. In his petition for certiorari review, the father contends that the trial court erred in ordering him to pay postminority support in addition to the educational support he had already been ordered to pay and in ordering him to reimburse the mother for a percentage of the extraordinary expenses.

II. Postminority Support
The Court of Civil Appeals accurately stated the general rule concerning postminority support:
"In Alabama, the general rule is that a trial court has no jurisdiction to require a parent to provide support for a child who has reached the age of majority. Whitten v. Whitten, 592 So.2d 183 (Ala.1991). However, there are two exceptions to the general rule: (1) when an adult child is so mentally or physically disabled that he cannot support himself, Ex parte Brewington, 445 So.2d 294 (Ala.1983), and (2) when application for post-minority educational support is made before the child reaches the age of majority. Ex parte Bayliss, 550 So.2d 986 (Ala.1989)."
763 So.2d at 252. Although this Court established in Ex parte Brewington, 445 So.2d 294 (Ala.1983), that parents have a duty to support their children "who continue to be disabled beyond their minority," 445 So.2d at 297, the Court did not establish any specific method for trial courts to use when calculating support for a disabled adult child. In Martin v. Martin, 494 So.2d 97 (Ala.Civ.App.1986), the Court of Civil Appeals held that in determining such support the trial court should consider the child's needs, the parent's financial ability to meet those needs, and any income available to the child. After Brewington and Martin were decided, this Court adopted child-support guidelines that this State's trial courts are required to use in calculating the appropriate amount of child support to be paid by a noncustodial parent. See Rule 32, Ala. R. Jud. Admin. In DeMo v. DeMo, 679 So.2d 265 (Ala.Civ.App.1996), the Court of Civil Appeals held that those child-support guidelines should be used in establishing child support to be paid for disabled adult children as well as in establishing support to be paid for minor children.[1] Although Brewington, Martin, and DeMo provide helpful direction in determining an award of support for a disabled adult child, they do not answer the questions presented by this case: (1) What constitutes a "disability" for purposes of requiring a noncustodial parent to contribute to the support of a disabled adult child? (2) How is the amount of support to be calculated?
Other courts have defined "disability" in economic terms, i.e., as an adult child's inability to adequately provide for his or her economic needs because of a mental or physical infirmity. See, e.g., Presley v. Presley, 65 Md.App. 265, 500 A.2d 322 (1985), in which the court held that an adult child who was mildly retarded and who was able to earn only $14,200 per year was disabled within the meaning of the Maryland statute and therefore was entitled to support from her noncustodial parent. The Presley court stated that the duty of support arises "when the child has insufficient resources and, because of mental or physical infirmity, insufficient income capacity to enable him to meet his reasonable living expenses." 65 Md.App. at 277, 500 A.2d at 328. See, also, Hanson *256 v. Hanson, 425 Pa.Super. 508, 625 A.2d 1212 (1993), holding that whether a court was to order support for a disabled adult child depended on whether the child was physically and mentally able to engage in profitable employment and whether such employment was available to that child at wages upon which the child could support herself. The Hanson court held that a child who because of her handicaps was able to earn only $2,850 annually was entitled to postminority support.
In addition, courts in our sister states have held that in order to require support for a disabled adult child the trial court must find a causal relationship between the adult child's inability to support himself and that child's mental or physical disability. See, e.g., State ex rel. Albert v. Sauer, 869 S.W.2d 853 (Mo.App.1994), in which the court held that although evidence indicated the child had brain damage and learning difficulties, no evidence indicated that because of his mental incapacity he was unable to support himself; and Ulery v. Ulery, 86 Ohio App.3d 290, 620 N.E.2d 933 (1993), in which the court reversed an order requiring support for an adult child who had a mild brain dysfunction and educational and behavioral problems, because the trial court had not found that because of his disability the child was unable to support himself.
We hereby adopt the reasoning of those courts that have established a two-part test for determining whether a disabled adult child is entitled to support. To award such support, the trial court must (1) determine that the adult child is not capable of earning an income sufficient to provide for his or her reasonable living expenses and (2) that the adult child's mental or physical disability is the cause of his or her inability to earn that income.
If the trial court, applying that two-part test, determines that the adult child is entitled to postminority support, then we agree with the Court of Civil Appeals that the court should use the child-support guidelines in Rule 32, Ala. R. Jud. P., to calculate the proper amount of that support. We agree with what the Court of Civil Appeals said in DeMo:
"[T]he guidelines authorize the trial court to fashion an award of child support that will fulfill all of the needs of an adult disabled child. Subsection (C)(4) of Rule 32 allows the trial court to make additional awards, in excess of basic child support, for extraordinary medical, dental, and educational expenses if it determines that such awards are in the best interest of the child. Also, Rule 32(A)(1)(e) allows the trial court to deviate from the guidelines to promote the best interest of the child. These subsections require the trial court to state a reason justifying the additional award or the deviation from the guidelines."
679 So.2d at 267.
In affirming the trial court's judgment in this present case ordering the father to pay $785 per month in postminority support (in addition to the educational support already ordered), the Court of Civil Appeals stated:
"Based upon our review of the record, we conclude that the mother presented substantial evidence that the son is so physically disabled that he is unable to support himself; therefore, the trial court correctly ordered the father to pay post-minority support for the son."
763 So.2d at 252. We disagree. The evidence does not establish, nor did the trial court find, that Joshua is unable to support himself. Furthermore, the trial court did not determine whether Joshua's disability was the cause of his alleged inability to support himself. Finally, we cannot determine from the record how the trial court calculated the amount of postminority support it ordered. We can find no indication that the trial court used the child-support guidelines.
We note that the father already was obligated, pursuant to the divorce judgment, to pay for Joshua's college expenses and health-care expenses "for so long as *257 possible under his current group health insurance policy." Thus, the facts of this particular case suggest that Joshua, who is a full-time college student, may need additional support only to compensate for income lost from an inability to perform part-time work during the school year or regular work during the months of summer vacation, if his disability prevents him from doing such work. We cannot make that determination, however, from the record before us.
We reverse that portion of the judgment of the Court of Civil Appeals affirming the award of postminority support. On remand, that court should direct the trial court to determine whether Joshua is able to support himself. If the evidence establishes that he is not, then the trial court must determine whether Joshua's physical disability is the cause of his inability to support himself. If so, then Joshua is entitled to postminority support, and the trial court should use the child-support guidelines to calculate that support, stating its reasons for any deviations from the guidelines.

III. Extraordinary Expenses
The trial court's judgment stated:
"A judgment is awarded against the [father] in favor of the [mother] for the sum of $22,794.00 representing reimbursement towards 90% of the hospital stay visit, cost of the van, and cost of renovation of the homeplace. The Court considers all of these to be reasonably necessary expenses for the child in light of his disabilities."
The father argues that this portion of the trial court's order was a retroactive modification of the divorce judgment. The Court of Civil Appeals affirmed that portion of the trial court's judgment, however, on the authority of Rule 32(C)(4), Ala. R. Jud. Admin., which allows a trial court to "make additional awards for extraordinary medical... expenses" in excess of the basic child-support obligation if the court "determines that such [additional] awards are in the best interest of the [child] and [if the court] states its reasons for making such additional awards." We affirm the judgment of the Court of Civil Appeals insofar as it affirmed the award of those extraordinary expenses.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, LYONS, BROWN, and ENGLAND, JJ., concur.
JOHNSTONE, J., concurs in part and dissents in part.
JOHNSTONE, Justice (concurring in part and dissenting in part).
I respectfully dissent from the application of the Child Support Guidelines to adult disabled children. I concur in the other holdings of the main opinion.
The genesis of Alabama's Child Support Guidelines, Rule 32, Ala. R. Jud. Admin., was the adoption of the Child Enforcement Amendments of 1984, 99 Stat. 1305, and the Family Support Act of 1988, 102 Stat. 2343, by the United States Congress, which mandated that the states adopt the federal child support guidelines and which enforced this mandate by threatening any noncomplying state with a reduction of its federal funding for Aid to Families with Dependent Children. 45 C.F.R. § 205.146, § 9, 99 Stat. 1305. The Congress used this indirect scheme for legislating child support because the United States Constitution does not grant Congress any direct or legitimate authority to legislate child support within the states. Thus the federal child support guideline scheme was, and still is, an affront to the principles of federalism and an injury to the sovereignty of the several states.
The Child Support Guidelines consist of an elaborate, comprehensive, and rigid set of Congressional value judgments. One reason the Constitution does not grant Congress the authority to impose these value judgments is that they are better made by the respective state governments, *258 more intimately knowledgeable of the people affected.
While the Child Support Guidelines now obtaining in Alabama provide for deviations, Rule 32(A), the restrictions on such deviations and the requirement for written findings by the trial court to sustain any deviation, combined with the onerous case-load of each trial judge, operate to discourage and to limit deviations. So do the decisions of the Court of Civil Appeals. See, e.g., State ex rel. O'Neal v. Jones, 646 So.2d 150 (Ala.Civ.App.1994), and Schlick v. Schlick, 678 So.2d 1176 (Ala.Civ.App. 1996).
Before the Child Support Guidelines were adopted in Alabama, our domestic relations judges assessed child support according to what the evidence proved was fair, equitable, and reasonable. Boswell v. Boswell, 280 Ala. 53, 189 So.2d 854 (1966); Langford v. Langford, 441 So.2d 962 (Ala. Civ.App.1983); Moore v. Moore, 396 So.2d 1074 (Ala.Civ.App.1981); Townsend v. Townsend, 337 So.2d 4 (Ala.Civ.App.1976). This rule allowed a trial judge to decide each case according to his or her consideration and evaluation of the myriad subtle variables presented by the evidence and the demeanor of the parties. The tables, formulas, and other strictures and mandates of the Child Support Guidelines compromise this very essence of judicial service to our society.
While the text of the federal statutes and the Child support Guidelines does not restrict the applicability of the latter to minor children, the members of Congress must have configured the guidelines primarily to fulfill their conception of the needs of minor children as the vastly predominating class. The needs of adult disabled children are starkly different and the variables more numerous. I respectfully submit that applying these guidelines to adult disabled children either will burden our trial judges with the necessity of written findings for deviations or will inject inequity into the decisions in most such cases.
NOTES
[1] We note a split in authority as to whether support for a disabled adult child should be calculated by using a state's child-support guidelines. In accord with the Court of Civil Appeals' holding in DeMo are Kimbrell v. Kimbrell, 47 Ark.App. 56, 884 S.W.2d 268 (1994); O'Connor v. O'Connor, 71 Ohio App.3d 541, 594 N.E.2d 1081 (1991); Crawford v. Crawford, 429 Pa.Super. 540, 633 A.2d 155 (1993); Peterson v. Smith, 307 S.C. 418, 415 S.E.2d 431 (Ct.App.1992); and Worford v. Stamper, 801 S.W.2d 108 (Tex.1990). Other courts have held that the child-support guidelines do not apply to disabled adult children. See In re Marriage of Hansen, 514 N.W.2d 109 (Iowa App.1994), and Streb v. Streb, 774 P.2d 798 (Alaska 1989).