[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 957 
Jerome J. Lightel, Jr. (the "father"), and Letitia Lightel Myers (the "mother") were married in the late 1970s and were divorced in March 1984. Four children, Teresa, J.J., Erica, and Kristina, were born of the parties' marriage. Only Kristina is still a minor. Shortly before J.J. and Erica reached the age of majority, the mother filed a petition that, among other things, sought postminority support for those two children. In that petition, the mother alleged that J.J. and Erica suffered from "pronounced mental retardation" and sought postminority support for them.
At the time of the hearing, J.J. was 20 years old and Erica was 19 years old. While they were in school, both children took special-education classes, but were "mainstreamed" with other students for part of each school day. J.J.'s IQ is 75, and Erica's IQ is in the low 70s. Both children are categorized as Educable Mentally Retarded ("EMR"). Both J.J. and Erica now have high school diplomas.
Kathy Arnold, the children's vocational rehabilitation counselor, testified that both children are employable but, at the time of trial, had not yet obtained employment. Arnold testified that J.J. had better communication skills than Erica. Arnold testified that, at the time of the trial, neither J.J. nor Erica was capable of living independently. She opined that J.J. might be able to live independently in three to five years and that Erica might be able to live independently in four to six years.
Both children presently live with the mother. The mother testified that the children are capable of taking care of their basic hygiene and their laundry. The children also do light cooking under the mother's supervision. J.J. has a driver's license, but he testified that he is not comfortable driving alone. Neither J.J. nor Erica leaves the home without the mother's permission.
J.J. receives $386.94 per month in Supplemental Security Income ("SSI") benefits. Erica receives $320.40 per month in SSI benefits. The mother presented evidence that the monthly support costs for the son and the daughter were $445.20 each.
The father paid monthly child support during the children's minority. When Teresa reached the age of majority, the father unilaterally reduced his child-support payments by one-fourth. The father testified that, after he retained counsel in this matter, his attorney told him that, absent a modification, he was still responsible for the full child-support obligation. Therefore, he resumed paying his full child-support obligation.
Under the terms of the divorce judgment, the father is also required to pay the mortgage payment and to pay for the insurance and taxes on the marital home, where the mother and children reside, until he is no longer obligated to pay child support for any of the parties' children. The father has continued to make those payments. It is unclear from the record whether those payments are considered alimony or an additional form of child support. *Page 958 
The mother testified that the amount of child support the children receive directly affects the amount of their SSI benefits; in calculating the amount of SSI benefits the children receive, the Government takes into consideration the fact that the children receive child support and that the father pays the mortgage on the home in which they live. The mother testified that she did not know the formula that the Government uses in calculating the amount of benefits the children received, but that those benefits would decrease as the amount of other support, including the father's mortgage and child-support payments, increased.
After receiving the ore tenus evidence, the trial court entered a judgment in which it, among other things, ordered the father to pay $826 per month in postminority support for J.J. and Erica and declined to offset that support obligation by the amount of SSI benefits the children received. The father appealed.
There are two exceptions to the general rule that a parent is not obligated to provide support for a child who has reached the age of majority. One exception is where application is made for postminority educational support before the child reaches the age of majority. Exparte Bayliss, 550 So.2d 986 (Ala. 1989). The other exception occurs where an adult child is physically or mentally disabled and is unable to support himself or herself. Ex parte Brewington, 445 So.2d 294 (Ala. 1983).
In order to determine whether an disabled adult child is entitled to postminority support, the "trial court must (1) determine that the adult child is not capable of earning an income sufficient to provide for his or her reasonable living expenses and (2) that the adult child's mental or physical disability is the cause of his or her inability to earn that income." Ex parte Cohen, 763 So.2d 253, 256 (Ala. 1999).
On appeal, the father first argues that the trial court erred in failing to apply the Ex parte Cohen test. The father also argues that inEx parte Cohen disability is defined in economic terms and that the trial court ignored the children's ability to provide at least some of their own reasonable living expenses, by finding that the children were unable to earn sufficient income to provide for their own support. However, these arguments are without merit.
In its judgment, the trial court specifically found that the son and daughter were unable, because of their mental disabilities, to sufficiently provide for their reasonable living expenses. Thus, the trial court made the findings required by Ex parte Cohen, supra. The record supports those findings. At the time of the trial in this matter, although both were seeking employment, neither child had yet obtained employment. Thus, when the trial court entered its judgment, the children were unable to provide for their own support through employment earnings. Should the children obtain employment and successfully contribute to their own support in the future, the father may petition the trial court for a modification of his child-support obligation. However, the evidence in the record supports the trial court's findings on this issue.
The father also argues that the trial court erred in refusing to offset the disabled adult children's reasonable living expenses by the amount of SSI benefits the children receive each month. This court has deemed an offset against child support appropriate where the child receives income from a third-party source. In Binns v. Maddox, 57 Ala. App. 230,327 So.2d 726 (Ala.Civ.App. 1976), this court held that a father was entitled to have credited *Page 959 
against his child-support obligation the Social Security disability benefits paid for the benefit of a child due to his father's disability. In so holding, this court stated:
 "Social Security disability payments represent money which an employee has earned during his employment and also that which his employer has paid for his benefit into a common trust fund under the Social Security Act. 42 U.S.C. § 301 et seq. These payments are for the purpose of replacing income lost because of the employee's inability to work upon becoming disabled. Thus, these payments substitute for income. . . ."
Binns v. Maddox, 57 Ala. App. at 233, 327 So.2d at 728. Thus, the court concluded, the purpose of a child-support order has been accomplished where Social Security disability benefits, which constitute a substitute for the income of the disabled parent, are paid to a child because of his parent's disability. Binns v. Maddox, supra.
However, in Martin v. Martin, 623 So.2d 1167 (Ala.Civ.App. 1993), this court upheld a trial court's refusal to credit the amount of Social Security benefits received by the parties' children against the father's child-support obligation.
In Self v. Self, 685 So.2d 732 (Ala.Civ.App. 1996), this court discussed the conflict in authority created by Binns v. Maddox and Martinv. Martin. This court decided that Binns v. Maddox contained the more well-reasoned holding and was, therefore, controlling authority.
In Self v. Self, the trial court ordered the disabled father to pay $150 per month in child support for his two minor children. Both children were mentally retarded and received SSI benefits because of their disabilities; they also received Social Security disability benefits because of the father's disability. On appeal, the father argued that he should be allowed a credit against his child-support obligation to the extent of the Social Security disability benefits received by the children because of his disability. This court held that the father's child-support "obligation is discharged only as long as, and to the extent that, the Social Security payments exceed his child support obligation." Self v. Self, 685 So.2d at 735.
In reaching its holding in Self v. Self, this court did not specifically state whether the father was to receive a credit for all Social Security benefits the children received or for just those Social Security benefits received as a result of the father's disability. However, in that appeal, the only argument the father made regarding credits against his child-support obligation was related to those benefits the children received because of his disability. See Self v.Self, 685 So.2d at 733, 734. We conclude that Self v. Self addressed only the issue of disability benefits paid because of the support-paying parent's disability.
The adult disabled children in this case receive SSI benefits. No Alabama case has dealt with whether SSI benefits paid to the child may be offset against a child's reasonable support needs.
SSI benefits are not a substitute for income; rather, they are a supplement to the recipient's income. The purpose of SSI benefits is to "assure recipients' income is maintained at a level viewed by Congress as the minimum necessary for the subsistence of that individual." In reMarriage of Benson, 495 N.W.2d 777, 781 (Iowa App. 1992).
The Kansas Court of Appeals has written concerning the Supplemental Security Income benefits program:
 "[this program is] designed to supplement the income of an aged, blind, or disabled person on the basis of that person's income and resources. See *Page 960 42 U.S.C. § 1381a (1988). The payment is only forthcoming when the disabled person's income and resources are insufficient to provide for that individual's special needs. When the recipient of SSI benefits is a disabled child, the payment is designed to supplement the income and the resources available to that child. These resources include the income or support the child receives or may expect to receive from an absent parent. 42 U.S.C. § 1382a(b)(9) (1988). It is only when the income available to the child falls below a certain level that eligibility attaches. In other words, SSI benefits are designed to supplement those resources available to the child and are only forthcoming where those resources are insufficient. The support of the child by the parents is considered in determining eligibility."
In re Marriage of Emerson, 18 Kan. App. 2d 277, 281, 850 P.2d 942, 946
(1993) (emphasis added) (holding that the child's receipt of SSI benefits does not reduce or offset a parent's obligation to pay child support).
SSI benefits are based on need; they reflect the amount of additional income needed by a disabled person to maintain himself at the federal minimum income level after all available income and resources are considered. See In re Marriage of Emerson, supra; Oatley v. Oatley,57 Ohio App.2d 226, 387 N.E.2d 245 (1977). In this case, the effect of offsetting child support by the amount of the SSI benefits the disabled adult child receives would be to reduce the disabled adult child's income below the federal minimum income level and, therefore, further increase the need for additional federal assistance. As the Iowa Court of Appeals has stated, an award of child support must not be structured so as to make the recipient eligible for welfare-type assistance. In re Marriageof Benson, supra.
In Oatley v. Oatley, supra, the court held that the child's receipt of SSI benefits did not justify a modification of, or affect, the parent's obligation to support the child. In so holding, the court stated that SSI benefits are a supplement to the child's income designed to assure the child maintains a standard of living equivalent to the federal minimum income level. The court also noted that, at frequent intervals, the recipient's eligibility for benefits and the appropriate amount of benefits are redetermined. Oatley v. Oatley, supra (citing42 U.S.C. § 1382 (c)(1)).
In Alabama, a parent's child-support obligation may be offset by payments by a third-party source where those payments constitute a substitute income source. See Self v. Self; supra; Binns v. Maddox, supra. However, SSI benefits are a supplement to income, not a substitute for it. Therefore, we conclude that the trial court correctly refused to offset the father's obligation to provide for the children's reasonable living expenses by the amount of SSI benefits the children receive.
Where a trial court determines that a disabled adult child is entitled to support pursuant to Ex parte Brewington, supra, the court should use the Rule 32, Ala. R. Jud. Admin., Child Support Guidelines in order to calculate the appropriate amount of support due the disabled adult child. Ex parte Cohen, supra; DeMo v. DeMo, 679 So.2d 265 (Ala.Civ.App. 1996). The parties were required to file the standardized Child Support Guidelines (CS-42) Form and a Child Support Obligation Income Statement/Affidavit (CS-41) Form. Rule 32(E), Ala. R. Jud. Admin.; Thomasv. Norman, 766 So.2d 857 (Ala.Civ.App. 2000). Neither party submitted these forms. Although the trial court's judgment makes *Page 961 
specific findings regarding the parties' incomes and states that it applied the Rule 32 Child Support Guidelines in ordering the father to pay $826 per month in postminority support for the two disabled adult children, this court is unable to determine how the trial court reached that figure. Accordingly, that portion of the judgment setting the amount of child support is reversed and the case is remanded for the trial court to enter an order in compliance with the Rule 32 Child Support Guidelines based on completed CS-42 income affidavits and on a CS-41 Child Support Guidelines form indicating the appropriate support amount. See Thomas v. Norman, supra. If the trial court determines that the application of the Child Support Guidelines is unjust or inequitable and elects to deviate from those guidelines in establishing the father's support obligation, it must make those findings required by Rule 32(A)(ii), Ala. R. Jud. Admin. Knight v. Knight, 739 So.2d 507
(Ala.Civ.App. 1999).
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ROBERTSON, P.J., and YATES, MONROE, and CRAWLEY, JJ., concur.