THOMPSON, Presiding Judge.
On September 16, 2014, Felicia Wojtala ("the mother") filed in the Henry Circuit Court ("the trial court") a complaint seeking a divorce from Thomas Wojtala ("the father"). In her complaint, the mother sought an award of joint legal and joint *39 physical custody of the parties' two minor children, an equitable property division, and an award of alimony and child support. The mother also requested pendente lite support. The father answered and counterclaimed, seeking an award of joint legal and joint physical custody of the parties' minor children and a division of the parties' marital property.
The mother filed three separate motions seeking pendente lite support, and the trial court conducted a hearing on those motions on January 29, 2015. Although the parties refer to an "order" issued by the trial court following that January 29, 2015, hearing, no pendente lite support order is contained in the record or was entered on the State Judicial Information System. In his brief on appeal, the father refers to that pendente lite "order" as a "verbal" order or instruction. It appears from the parties' references, both below and in their briefs to this court, to that pendente lite "order" that the trial court orally instructed the father to pay household bills pending the final hearing on the merits.
The trial court conducted a hearing on the parties' claims, and on May 6, 2016, it entered an order in which it awarded custody of the parties' minor children to the mother, ordered the father to pay child support, and divided the parties' marital property. The mother filed a purported postjudgment motion, which the trial court denied, and the mother appealed.
This court remanded the action to the trial court for a determination of the mother's claim for postminority support for the parties' minor children. On February 23, 2017, the trial court entered a judgment in which it denied the postminority-support claim. This court later again remanded the action for the trial court to rule on all of the pending property-division claims.[1] On March 30, 2017, the trial court entered an order awarding the mother 20% of the father's military-retirement benefits. That order, because it disposed of the last of the pending claims between the parties, constituted a final judgment. See Smith v. Butler-Austin, 108 So.3d 1014, 1020 (Ala. Civ. App. 2012) (opinion on return to remand) ("Those judgments disposed of the remaining pending claims between the parties and, therefore, constituted a final judgment in this matter.").
The record reveals the following pertinent facts. The parties married in August 1985. Two children were born of the parties' marriage; at the time of the entry of the divorce judgment, those two children were no longer minors. During their marriage, the parties had also adopted two children, both of whom were still minors at the time of the entry of the divorce judgment. For the purpose of this opinion, we refer to those two minor children as "the son" and "the daughter." The son and the daughter have special needs. The State of Hawaii, where the son and the daughter were adopted, provides a stipend for the children that they will continue to receive until they reach the age of majority. The son reached the age of majority for Hawaii, i.e., 18 years of age, in May 2016. See Haw. Rev. Stat. § 577-1 ; but see § 26-1-1, Ala. Code 1975 (the age of majority in Alabama is 19). The daughter will reach the age of majority for Hawaii in December 2017.
The son has had some behavioral problems, and the mother testified that he has Attention-Deficit Disorder ("ADD") and Attention-Deficit/Hyperactivity Disorder ("ADHD"). The daughter has bipolar disorder *40 , and she lived in a treatment facility for all except one month of the nearly two-year period during which the parties were separated. The daughter's treatment in that facility was paid by Medicaid. During the time she was in that in-patient treatment facility, the mother continued to receive the stipend for both the son and the daughter; we note that the father received and deposited that stipend for several months following the parties' separation when the son was living with him. The mother admitted she had spent little to none of the adoption stipend on the daughter during the time the daughter was in the treatment facility.
The mother testified that she received $300 in income every two weeks from a restaurant owned by her boyfriend and in which she worked; the father's questioning of the mother could have made the trial court question the veracity of the mother's claimed income. Regardless, the mother conceded that she had, until recently, worked for $9 an hour and that she was capable of earning at that income level for full-time employment.
The father has retired from the military, and he receives $3,353.52 monthly in military-retirement income. In addition, the father testified that he earned $50 per hour as a maintenance test pilot for the Army Fleet Support. The father testified that his income from that job was approximately $90,000 in the year before the divorce hearing.
In its divorce judgment, the trial court determined that, under the Rule 32, Ala. R. Jud. Admin., child-support guidelines, the father's child-support obligation for the son and the daughter should be $1,594.01. We note that the record on appeal does not contain the child-support forms that Rule 32 and our caselaw require be submitted to the trial court and included by the trial court in its judgment. Lightel v. Myers, 791 So.2d 955, 961 (Ala. Civ. App. 2000). However, the trial court then credited the father with the entire $1,352 monthly adoption stipend for those children, and it thereby reduced the father's child-support obligation and ordered the father to pay $242 per month as child support.[2]
The mother argues on appeal that the trial court erred in offsetting the father's child-support obligation by affording him a credit in the amount of the adoption subsidy received for the benefit of the son and the daughter. In W.R. v. C.R., 75 So.3d 159 (Ala. Civ. App. 2011), this court held that an adoption subsidy could not serve as a credit against a support-paying spouse's child-support obligation. In that case, the mother was awarded custody of the parties' adopted special-needs children, and the father argued that he should receive *41 a credit for at least half of the amount of the adoption subsidy the parties received as a result of adopting the special-needs children. This court analyzed whether an adoption subsidy for special-needs children is intended to be a substitute for a parent's income or a supplement to that income. This court noted that payments from a third-party source may be offset against a child-support obligation if those third-party payments are intended to be a substitute for the parent's income, but that no offset was available if the third-party payments are intended to be a supplement to the parent's or parents' income. 75 So.3d at 166-67. The court also pointed out that, had the parents not divorced, the children would have had the benefit of both parents' income together with the adoption subsidy. This court concluded that "the adoption subsidy is supplemental to the adoptive parents' income, and, as such, the subsidy cannot serve as a credit against the father's child-support obligation." W.R. v. C.R., 75 So.3d at 169.
After reaching that conclusion in W.R. v. C.R., supra, this court noted that the father had argued that the trial court should have deviated from the Rule 32 child-support guidelines. " 'A trial court has the discretion to deviate from the child support guidelines in situations where it finds the application of the guidelines would be manifestly unjust or inequitable.' " W.R. v. C.R., 75 So.3d at 169 (quoting State ex rel. Golden v. Golden, 710 So.2d 924, 926 (Ala. Civ. App. 1998) ). This court held that, under the facts of that case, the trial court had not abused its discretion in refusing to deviate from the child-support guidelines.
The father in this case, arguing in support of the trial court's judgment, contends that the trial court deviated from the Rule 32 child-support guidelines in reaching that part of its judgment pertaining to child support. The father cites a case from Minnesota in which the court held that, in addition to considering the parents' ability to meet the child's needs, the Minnesota child-support statutes required that the needs and financial resources of the child could be considered in determining child support. See Strandberg v. Strandberg, 664 N.W.2d 887 (Minn. Ct. App. 2003). In that case, however, the father's ability to pay child support was at issue because of his low income.
"In this case, excluding the adoption subsidy from consideration in setting child support produces an unreasonable result. The overarching policy of the child support statute is to ensure that children's needs are met. Murphy v. Murphy, 574 N.W.2d 77, 81 (Minn. App. 1998). The child support statute and guidelines are also based on the obligor's ability to pay. Schneider [v. Schneider ], 473 N.W.2d [329,] 332 [ (Minn. Ct. App. 1991) ]. In light of those principles, it is reasonable to consider the adoption subsidy as a resource available for meeting the child's needs, particularly in cases like this where the obligor parent cannot cover his own expenses. It is inappropriate to have litigants pushed into poverty by child support obligations that are set without considering all of the resources available to meet the needs of the child. Accordingly, we conclude that the adoption subsidy should be considered a resource of the child when determining child support."
Strandberg v. Strandberg, 664 N.W.2d at 890.
The father in this case does not contend, as did the father in the Minnesota case on which he relies, that he is financially unable to contribute to the support of the son and the daughter. Indeed, although the trial court did not include in its judgment the child-support forms required by Rule *42 32(E), see Lightel v. Myers, supra, the father's testimony establishes that his monthly income exceeds $10,000. Rather, the father contends that the adoption subsidy is received and controlled solely by the mother and, therefore, that he is entitled to a credit for the entire amount of the adoption subsidy. The father argues that the trial court "could have" deviated from the child-support guidelines and determined that the father's child-support obligation should be offset by the adoption subsidy.
We disagree. The adoption subsidy is supplemental to the parents' incomes. W.R. v. C.R., supra. The father has criticized the manner in which the mother has managed the adoption subsidy, but, in doing so, the father has made no request other than that he receive credit for the entire subsidy; in other words, the father's position would mean that the State of Hawaii, through the adoption subsidy, would pay the greater part of his child-support obligation, such that the son and the daughter would not receive the benefit of both parents' incomes in addition to the supplemental income provided through the adoption subsidy.
We conclude that the trial court improperly afforded the father credit for the adoption subsidy, and, therefore, we reverse the trial court's child-support award. Upon remand, in addition to considering the adoption subsidy to be a supplement to both parents' incomes, the trial court is instructed to include in its judgment on remand the forms required by Rule 32(E), Ala. R. Jud. Admin. Lightel v. Myers, supra. Further, if the trial court determines that it should deviate from the child-support guidelines, that judgment should contain the findings necessary to support a deviation.
"Rule 32(E), Ala. R. Jud. Admin., ' " 'mandates the filing of a standardized Child Support Guidelines Form and a Child Support Obligation Income Statement/Affidavit Form.' " ' M.S.H. v. C.A.H., 829 So.2d 164 (Ala. Civ. App. 2002) (quoting Thomas v. Norman, 766 So.2d 857, 859 (Ala. Civ. App. 2000), quoting in turn Martin v. Martin, 637 So.2d 901, 902 (Ala. Civ. App. 1994) ) (emphasis omitted). ' "Compliance with Rule 32(E) is mandatory, even though the trial court may find that the application of the guidelines would be unjust or inequitable." ' M.S.H. v. C.A.H., 829 So.2d at 169 (quoting Thomas, 766 So.2d at 859 ). When the court determines that the application of the guidelines would be manifestly unjust or inequitable and then deviates from those guidelines in setting a support obligation, the court must make the findings required by Rule 32(A)(ii), Ala. R. Jud. Admin. M.S.H. v. C.A.H., supra (citing Thomas, 766 So.2d at 859 ). Rule 32(A), Ala. R. Jud. Admin., allows the trial court to deviate from the guidelines so long as the deviation is based on 'evidence presented in court' contained in a 'written finding on the record.' In other words, the subsection requires the trial court to state a reason justifying its deviation from the guidelines. However, because child support is for the benefit of the minor child, see State ex rel. Shellhouse v. Bentley, 666 So.2d 517, 518 (Ala. Civ. App. 1995), the best interest of the child is the controlling consideration of the trial court in any action seeking to modify child support. Gautney v. Raymond, 709 So.2d 1279, 1281 (Ala. Civ. App. 1998)."
DeYoung v. DeYoung, 853 So.2d 967, 969-70 (Ala. Civ. App. 2002).
The mother also argues that the trial court erred in failing to require the father to pay postminority support for the son and the daughter. In *43 Ex parte Brewington, 445 So.2d 294 (Ala. 1983), our supreme court held that a court can require parents to financially support a mentally or physically disabled adult child who cannot support himself or herself because of a disability that existed before the child reached the age of majority. Recently, in Ex parte Christopher, 145 So.3d 60 (Ala. 2013), our supreme court held that, for purposes of requiring parents to contribute to the support of their children, the term "children" does not include adult children, and, therefore, our supreme court held that the courts may not order a parent to contribute to the postminority educational support, i.e., college expenses, of an adult child. In reaching that holding, our supreme court did not rule on the issue of whether a parent could be required to contribute to the postminority support of a disabled child. Ex parte Christopher, 145 So.3d at 66 ("Regardless of whether the common law might have recognized an obligation to support disabled children past their majority, an issue not before us, it certainly never contemplated granting a divorce court the power to require payment for postminority educational expenses."). In Knepton v. Knepton, 199 So.3d 44, 47 (Ala. Civ. App. 2015), this court held that, with regard to the support of an adult disabled child, " Ex parte Brewington remains good law at this point."
" 'To award [ Brewington ] support, the trial court must (1) determine that the adult child is not capable of earning an income sufficient to provide for his or her reasonable living expenses and (2) that the adult child's mental or physical disability is the cause of his or her inability to earn that income.' "
Knepton v. Knepton, 199 So.3d at 47 (quoting Ex parte Cohen, 763 So.2d 253, 256 (Ala. 1999), and reversing the dismissal of the mother's postminority-support claim, concluding that "the allegations in the mother's complaint, if proven, would authorize the trial court to grant the equitable relief the mother Ex parte Brewington.").
In its February 23, 2017, judgment denying the postminority-support claim, the trial court stated that the parties had presented little evidence pertaining to the son and the daughter's disabilities and their abilities to earn a living to support themselves. With regard to the son, we agree. The mother presented evidence indicating that the son has ADD and ADHD. The son was working, apparently after school, in the same restaurant in which the mother works. Although the mother expressed concern about his future earning potential, she did not present evidence tending to indicate that the son was disabled and could not be self-supporting.
However, the evidence indicated that the parties' daughter's disability was diagnosed when she was 11 years old; the father testified that the daughter has bipolar disorder. The daughter has been hospitalized, off and on, in mental-health institutions since she became a teenager. As previously mentioned, as a result of her mental-health issues, the daughter, who was 16 years old at the time of the divorce hearing, had resided in a treatment facility for the vast majority of the 2 years preceding that hearing. The parties and the son each testified that, when she was discharged from the mental-health facilities, the daughter remained home only briefly; each agreed that the daughter's behavior quickly resulted in her being institutionalized again.
The trial court is correct that the mother did not specifically present evidence indicating that the then 16-year-old daughter could not support herself in the future. However, the evidence the mother did present indicates that the daughter is nearing the age of majority and, in the two *44 years preceding the hearing, had not been able to remain in a home environment for more than a month without requiring further in-patient treatment. It is clear from the evidence regarding her frequent and lengthy hospitalizations that the daughter will not be capable of supporting herself in the near future. Thus, given the facts of this case, we cannot agree with the trial court's determination that the mother failed to present evidence regarding the daughter's specific disability or the fact that the daughter is unlikely to be able to support herself in the future.
In that part of its judgment addressing the issue of postminority support, the trial court focused on the lack of evidence pertaining to the daughter's likely future financial needs and her possible sources of income. The trial court concluded by stating that it could "move forward on further remand should the Court of Civil Appeals direct further hearings or the parties can file a petition for modification." The trial court's conclusion is in line with precedent from this court providing that support for an adult disabled child can be sought and determined even after that child reaches the age of majority, as long as the disability "occurred during the child's minority and continued thereafter." Elliott v. Bretherick, 555 So.2d 1109, 1111 (Ala. Civ. App. 1989).
"[I]f a mentally or physically dependent child continues to be disabled beyond minority and support is needed and the non-custodial parent is able to contribute toward that need, the duty to support can be enforced through proceedings such as were instituted in the present case, although the original divorce judgment contained no provision for that child's support and the trial court did not expressly retain the right to order such support in the future. The age of such a disabled child at the time of the divorce or at the time that the Brewington support duty is sought to be enforced is immaterial as long as the disability occurred during the child's minority and continues thereafter. Kruvant [v. Kruvant], [100 N.J.Super 107, 241 A.2d 259 (1968) ]."
Martin v. Martin, 494 So.2d 97, 100 (Ala. Civ. App. 1986). See also Ruberti v. Ruberti, 117 So.3d 383, 387 (Ala. Civ. App. 2013) (parent with custody of an adult disabled child awarded postminority support for that child in a modification action initiated after the child reached the age of majority); Martin v. Martin, 623 So.2d 1167, 1170 (Ala. Civ. App. 1993) (holding that postminority support for an adult disabled child "can be ordered regardless of the age of the disabled child at the time of the divorce and that the amount of that support is determined after giving consideration to the child's needs, the child's income through [some forms of] Social Security or other similar sources, and the parent's ability to respond to the child's needs"); Lightel v. Myers, 791 So.2d at 958 ("Should the [adult disabled] children obtain employment and successfully contribute to their own support in the future, the father may petition the trial court for a modification of his child-support obligation."); and Skates v. Skates, 520 So.2d 525, 526 (Ala. Civ. App. 1988) (affirming a modification judgment requiring a noncustodial parent to continue to contribute to the support of his adult disabled child past the age of majority). Accordingly, we affirm the trial court's denial, at this time, of postminority support for the daughter, as well as that part of its judgment providing that the issue may again be addressed, if necessary, in a modification action.[3]
*45 The mother also argues that the trial court erred in its division of property. When a trial court fashions a property division following the presentation of ore tenus evidence, its judgment as to that evidence is presumed correct on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that its decision is plainly and palpably wrong. Roberts v. Roberts, 802 So.2d 230, 235 (Ala. Civ. App. 2001) ; Hall v. Mazzone, 486 So.2d 408, 410 (Ala. 1986). A property division is required to be equitable, not equal, and a determination of what is equitable rests within the broad discretion of the trial court. Parrish v. Parrish, 617 So.2d 1036, 1038 (Ala. Civ. App. 1993). In fashioning a property division and an award of alimony, the trial court must consider factors such as the earning capacities of the parties; their future prospects; their ages, health, and station in life; the length of the parties' marriage; the source, value, and type of marital property; and the conduct of the parties in relation to the breakdown of the marriage. Robinson v. Robinson, 795 So.2d 729, 734 (Ala. Civ. App. 2001).
During the ore tenus hearing, the parties testified to the valuations of their items of marital property by referencing an exhibit apparently prepared by the father. The mother offered that exhibit into evidence, and the trial court admitted it into evidence. In her brief on appeal, the mother relies on the valuations in that exhibit in making her argument on this issue to this court, and the father has also referenced that exhibit and the valuations on it. The father does not dispute the mother's valuations, in her brief on appeal, of the respective awards of marital property set forth in the divorce judgment; he does, however, cite testimony from the mother that indicates that she had a mutual-fund account with a value of approximately $114,000 that is not listed on the exhibit on which the trial court relied in fashioning its property division. Although the parties do not dispute the valuation of the property as divided by the trial court, they disagree about whether that property division was equitable. Because the parties agree about the value of the assets as set forth on the exhibit submitted into evidence by the mother, and as divided by the trial court, we conclude that it is not necessary to set forth a list of each marital asset and its corresponding monetary value.
In her brief on appeal, the mother maintains that the trial court awarded her marital assets with a total value of $354,278; that award included the marital home, subject to its mortgage indebtedness. The trial court awarded the father assets with a total value of $517,428. Thus, the mother argues, and the father does not dispute, that the father was awarded 59% of the marital assets and the mother was awarded 41% of those assets. The mother also maintains that, in the property division, the trial court awarded the father 95% of the parties' liquid or semi-liquid assets, in the forms of retirement accounts, bank accounts, and investments.[4] We note that the mother did not alter that argument in her brief submitted after remand, and, therefore, in making that argument, the mother disregards the amount in military-retirement benefits she was awarded in the March 30, 2017, judgment.
*46 The father was in the Army for more than 20 years, and the family moved frequently. The mother testified that the frequent moves for the father's employment prevented her from advancing in any job. At the time of the divorce hearing, the father was receiving $3,353.22 per month in military-retirement benefits, and he continued to work at a rate of $50 per hour; the father claimed to have earned, in addition to his military-retirement income, $90,000 in 2015. The mother testified that, at the time of the divorce hearing, she earned $300 every two weeks, but she did not dispute that she was capable of full-time employment at $9 per hour.[5]
The father testified that he believed the mother had had an affair in 2006 or 2007, when he was serving in Iraq. The father testified that, in December 2012, he discovered "intimate" e-mails between the mother and that man, indicating that that relationship had resumed, and the father stated that he confronted the mother about that relationship. The parties did not separate at that time, but the father testified that he believed that relationship caused the breakdown of the parties' marriage. The father testified that, in March 2014, he discovered that the mother's relationship with that man had continued. In his answer to the mother's complaint, the father alleged that the parties had separated in March 2014. The mother admitted that she had been texting and communicating with that man at approximately the time of the parties' separation, but she denied that that relationship had led to the breakdown of the parties' marriage. The mother testified that her relationship with that man had ended.
The father testified that, at the time of the divorce hearing, the mother was living with a different man ("the boyfriend") than the one he believed she was seeing during the marriage. The mother testified that she met the boyfriend well after the parties separated and that she had assisted him in opening a restaurant. The mother admitted that the boyfriend comes to her home daily and that he drives one of the vehicles the parties owned during their marriage.
The parties were married for approximately 29 years, and they had 4 children. At the time of the divorce hearing, the mother was 50 years old and the father was 51 years old. The mother argues that, given the parties' ages and prospective earning abilities, the trial court erred in fashioning its property division; she also contends that she should have been awarded one-half of the father's military-retirement benefits. The father contends in his original brief submitted to this court, however, that the property division, while favoring him, was not inequitable.[6] See Parrish v. Parrish, supra (a property division *47 must be equitable, but is not required to be equal). The property division, as calculated by the parties, indicates that the trial court awarded the father 59% of the parties' marital assets listed on the exhibit submitted to the trial court; the wife received 41% of those assets. In addition, there is evidence indicating that the mother had a mutual-fund account in her name that was not listed on that exhibit. The trial court also awarded the mother 20% of the father's military-retirement benefits, which amounts to an award to the mother of approximately $670 monthly.
The parties were married for 29 years. They are approximately the same age, but the father's prospects for earning income are much higher than the mother's. The record indicates that the mother's earning potential has been impacted by the parties' frequent moves necessitated by the father's career during their 29-year marriage. However, a trial court may also consider the fault of the parties with regard to the breakdown of the marriage when fashioning its property division. In this case, although the trial court divorced the parties on the basis of incompatibility, the evidence supports a conclusion that the mother's relationship with another man resulted in the breakdown of the parties' marriage. " ' "[E]ven where the parties are divorced on the grounds of incompatibility, the conduct of the parties and fault with regard to the breakdown of the marriage are factors for the trial court to consider in fashioning its property division." ' " Culver v. Culver, 199 So.3d 772, 777 (Ala. Civ. App. 2016) (quoting Ex parte Drummond, 785 So.2d 358, 363 (Ala. 2000), quoting in turn Myrick v. Myrick, 714 So.2d 311, 315 (Ala. Civ. App. 1998) ). This court might not have reached the same property division as did the trial court. However, given the facts of this case and the arguments of the parties, we cannot say that the mother has demonstrated that the trial court erred in fashioning its property division and its division of the father's military-retirement income.
We affirm the trial court's property division. We reverse the child-support award and the trial court's determination not to reserve the issue of postminority support for the daughter, and we remand the cause for the entry of a judgment in compliance with this opinion. We pretermit discussion of the mother's argument on appeal that the trial court erred in failing to conduct a hearing on her postjudgment motion.
The mother's request for an attorney fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Pittman and Thomas, JJ., concur.
Donaldson, J., concurs specially.
Moore, J., concurs in the result, without writing.
DONALDSON, Judge, concurring specially.
I concur. Regarding the claim for postminority support, this court must apply Ex parte Brewington, 445 So.2d 294 (Ala. 1983), despite any conflict with Ex parte Christopher, 145 So.3d 60 (Ala. 2013). See Knepton v. Knepton, 199 So.3d 44, 48 (Ala. Civ. App. 2015) (Donaldson, J., concurring in the result).

In their briefs submitted to this court, neither party submitted a "statement of jurisdiction" that was compliant with Rule 28(a)(3), Ala. R. App. P., and neither party addressed whether the order from which the appeal was taken was final.

The child-support provision of the divorce judgment reads:
"The mother currently receives from the State of Hawaii monthly stipends for the adopted children which total $1,352 per month or $676 per child. This support is ongoing and is paid in accordance with the provisions of Hawaii State Law. The Court recognizes that payment. In utilizing the Alabama Child Support Guidelines, the Court finds that the [father] should pay a total of $1,594.01 in child support to the custodial parent [ (the mother) ]. Accordingly, the father is to pay $242 to the mother as child support in addition to that received from the State of Hawaii. Said child support commences immediately and shall be due and payable on the 1st day of each month thereafter until each child reaches the age of majority according to the Law of the State of Alabama or shall marry, die or otherwise become emancipated. When each child reaches the age of majority, becomes married, dies or otherwise is emancipated the child support shall be reduced pro-rata by 50%. In the event that the stipend from the State of Hawaii is increased or decreased the child support shall be subject to modification."

At the time of the divorce hearing, the daughter's expenses were paid by Medicaid and a program through which she was institutionalized. However, it is possible that the daughter will need postminority support because of her disability.

The father had five retirement accounts with a total value of $182,176, and the parties owned stocks with a value of $6,380; all of those assets were awarded to the father. The mother was awarded bank accounts with lower values or that had been largely depleted during the pendency of the divorce action.

As indicated earlier in this opinion, the father questioned the veracity of the mother's claim that she received only $300 in income every two weeks.

We note that, after this court remanded the action and the trial court entered its March 30, 2017, final judgment, this court offered the parties the opportunity to submit amended briefs to this court, pursuant to Rule 28A, Ala. R. App. P., and that both parties indicated they would do so. In his amended brief after remand, the father argues that the trial court erred by awarding the wife any portion of his military-retirement benefits. However, the father did not file a cross-appeal challenging that award, and, therefore, this court is precluded from addressing his argument. The law of Alabama is well settled on this point. See McMillan, Ltd. v. Warrior Drilling & Eng'g Co., 512 So.2d 14, 24 (Ala. 1986) ("In the absence of taking an appeal, an appellee may not cross-assign as error any rulings of the trial court adverse to appellee."); see also Burns v. Motors Ins. Corp., 530 So.2d 824, 829 (Ala. Civ. App. 1987) ; and Smith v. Logan, 429 So.2d 598, 601 (Ala. Civ. App. 1982).